[No. 83244-7. En Banc.]
Argued June 29, 2010. Decided September 9, 2010.

THE STATE OF WASHINGTON, *Respondent*, v. JAMES L. ERVIN, *Petitioner*.

---

816

*Maureen M. Cyr* (of *Washington Appellate Project*), for petitioner.

*Daniel T. Satterberg, Prosecuting Attorney*, and *James M. Whisman* and *Michael J. Pellicciotti, Deputies*, for respondent.

¶1 OWENS, J. — James Ervin was convicted in 2006 of felony violation of a protection order. At sentencing, the State and Ervin disputed the proper offender score. This dispute turned upon whether two of Ervin's prior class C felony convictions had "washed out"—that is, whether Ervin had complied with RCW 9.94A.525(2)(c) and the prior felonies should therefore no longer be included in his offender score. Specifically, the parties disagreed about whether the 17 days Ervin spent in jail for violating a term of his probation for a misdemeanor interrupted the requisite "five consecutive years in the community without committing any crime that subsequently results in a conviction." RCW 9.94A.525(2)(c). Because Ervin committed no crimes for a five-year period and his incarceration was not pursuant to a felony conviction, we conclude that his prior class C felony convictions washed out and may not be included in his offender score. We therefore reverse the Court of Appeals decision and remand the case for resentencing.

FACTS

¶2 Ervin's criminal history begins with a 1989 juvenile felony conviction for burglary in the second degree, a class B felony. In 1991, while still a juvenile, Ervin committed a second felony, possession of stolen property, which is a class C felony. Ervin's next class C felony occurred in 1994, when he was convicted of rendering criminal assistance in the

first degree. Less than five years after his release from confinement on this last charge, Ervin committed misdemeanor criminal trespass on April 15, 1999, and was subsequently convicted. The trial court sentenced Ervin to a 90-day suspended sentence and put him on probation. One requirement of probation was that Ervin attend anger management classes. When Ervin failed to attend these classes, he was jailed for 17 days, from January 25, 2002, until February 11, 2002.

¶3 On July 28, 2005, Ervin committed assault in the fourth degree, a misdemeanor, for which he was later convicted. Between September 2005 and January 2006, Ervin was convicted of one controlled substances felony and five misdemeanors relating to violations of court orders.

¶4 Ervin violated another protection order in September 2006. Because of his prior convictions for violating court orders, Ervin was convicted of a felony for this violation. At sentencing, Ervin argued that his prior class C felonies had washed out because he went five consecutive years without committing a crime, from his April 15, 1999, commission of misdemeanor criminal trespass until his July 28, 2005, commission of fourth degree assault. The State disagreed, arguing that his 17 days in jail in 2002 interrupted the five-year wash-out period, even though the violation of probation was not a crime. The trial court agreed with the State's interpretation of the statute.

¶5 Ervin appealed his sentence but not his conviction. The Court of Appeals agreed with the trial court's interpretation of the statute, holding that the phrase "in the community" in RCW 9.94A.525(2)(c) means that any time spent in confinement interrupts the wash-out period. *State v. Ervin*, 149 Wn. App. 561, 562, 205 P.3d 170 (2009). The Court of Appeals therefore affirmed Ervin's sentence. *Id.* Ervin timely filed a petition for review, which we granted. *State v. Ervin*, 167 Wn.2d 1001, 220 P.3d 208 (2009).

## ISSUE

¶6 Does time spent in jail pursuant to a violation of probation stemming from a misdemeanor interrupt an offender's wash-out period?

## ANALYSIS

### A. Standard of Review

■ ¶7 Resolution of this case turns exclusively on a question of statutory interpretation, which is a question of law reviewed de novo. *In re Det. of Williams*, 147 Wn.2d 476, 486, 55 P.3d 597 (2002).

### B. Ervin's Incarceration Did Not Interrupt the Wash-out Period

■■ ¶8 When interpreting a statute, "the court's objective is to determine the legislature's intent." *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). The surest indication of legislative intent is the language enacted by the legislature, so if the meaning of a statute is plain on its face, we " 'give effect to that plain meaning.' " *Id.* (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). In determining the plain meaning of a provision, we look to the text of the statutory provision in question, as well as "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Id.* An undefined term is "given its plain and ordinary meaning unless a contrary legislative intent is indicated." *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998). If, after this inquiry, the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we "may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent." *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007).

■ ¶9 This case concerns the proper interpretation of RCW 9.94A.525(2)(c), which governs when class C felony convictions may be included in a person's offender score. That statute provides, in relevant part:

[C]lass C prior felony convictions . . . shall not be included in the offender score if, since the last date of release from confinement . . . pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

RCW 9.94A.525(2)(c). In construing this statute, the Court of Appeals has helpfully broken it down into two clauses: a " 'trigger[ ]' " clause, which identifies the beginning of the five-year period, and a " 'continuity/interruption' " clause, which sets forth the substantive requirements an offender must satisfy during the five-year period. *In re Pers. Restraint of Nichols*, 120 Wn. App. 425, 432, 85 P.3d 955 (2004). We adopt this terminology to assist our discussion of the statute.

■ ¶10 In this case, the parties agree that the trigger date occurred sometime in 1994 or 1995 when Ervin was released from confinement pursuant to his 1994 felony conviction. Less than five years after his release, Ervin committed misdemeanor criminal trespass on April 15, 1999. Because Ervin was then convicted, this crime implicated the continuity/interruption clause, effectively resetting the five-year clock. *See State v. Hall*, 45 Wn. App. 766, 769, 728 P.2d 616 (1986). Both sides also agree that Ervin did not commit any crime resulting in a conviction between April 15, 1999, and July 28, 2005. The sole point of contention is the phrase "in the community" and whether that phrase means that time spent in jail for a violation of probation stemming from a misdemeanor conviction interrupts the five consecutive years required for class C felonies to wash out.

¶11 We conclude that both parties advance reasonable interpretations of the plain language and that the statute is

therefore ambiguous. The State's argument is that "in the community" is an independent requirement that the offender not be in confinement. This definition comports with one ordinary meaning of the term "community," which is defined as, inter alia, "society at large : PUBLIC." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 460 (2002). It is also seemingly supported by the use of the term in related statutory provisions. *See, e.g.*, RCW 9.94A.030(5) (" 'Community custody' means that portion of an offender's sentence of confinement . . . served in the community."), .723 (defining an action as "a violation of the conditions of supervision if the offender is in the community and an infraction if the offender is in confinement"). This reading is a reasonable one.

¶12 Similarly, Ervin puts forth a reasonable interpretation of the statute's plain meaning. Ervin reads the term "in the community" to distinguish between the offender's status for purposes of the trigger clause (i.e., in confinement pursuant to a felony) and for purposes of the continuity/interruption clause (i.e., not in confinement pursuant to a felony). This comports with another dictionary definition of the term "community": "a body of individuals organized into a unit or manifesting usu. with awareness some unifying trait." WEBSTER'S, *supra*, at 460. This definition is also consistent with the usage of "in the community" in the other statutes cited by the State. In those statutes, the "not in confinement" meaning comes from their contrasting "in the community" with incarceration. *See, e.g.*, RCW 9.94A.723 (contrasting "in the community" with "in confinement"). This contrast gives context and meaning to the term "in the community" in those statutes. RCW 9.94A.525(2)(c), however, does not contrast "in the community" with "in confinement"; it contrasts "in the community" with "confinement . . . pursuant to a felony conviction." Ervin's interpretation of the plain meaning is therefore also reasonable.

¶13 As the plain meaning of the statute is ambiguous, we turn to familiar tools of statutory construction.[1] One such canon of construction is that "we interpret a statute to give effect to all language, so as to render no portion meaningless or superfluous." *Rivard v. State*, 168 Wn.2d 775, 783, 231 P.3d 186 (2010). The State contends that the failure to adopt its interpretation will render the term "in the community" superfluous. To the contrary, as we have explained, under Ervin's interpretation, the phrase distinguishes between an offender's status for purposes of the trigger and continuity/interruption clauses. In addition, the language, as interpreted by Ervin, ensures that time spent in prison on a subsequent felony cannot be counted toward the wash-out period. *Cf. State v. Smith*, 65 Wn. App. 887, 892, 830 P.2d 379 (1992) (relying on the "in the community" language to hold that time spent in confinement on a different felony does not count toward the wash-out period).

¶14 Indeed, it is the State's interpretation that would result in superfluous statutory language. The State's interpretation of the phrase "in the community" would render the entire phrase "since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction" superfluous, for if "in the community," RCW 9.94A.525(2)(c), inherently has the meaning argued by the State, time spent in confinement pursuant to the felony would already interrupt the wash-out period. Thus, the wash-out period would already start only upon release from confinement pursuant to a felony, rendering much of the trigger clause superfluous. This counsels against the State's reading.

¶15 Both parties also proffer results of their opponent's interpretation that they claim would be absurd. It is true that we presume the legislature does not intend absurd results and, where possible, interpret ambiguous language

---

[1] Though the rule of lenity applies to sentencing statutes, *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 462, 219 P.3d 686 (2009), it is applicable only *after* employing tools of statutory construction, *State v. Coria*, 146 Wn.2d 631, 639, 48 P.3d 980 (2002).

to avoid such absurdity. *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983). For its absurd result, the State posits a released felon who, shortly after release, commits six misdemeanors, receives deferred sentences, violates probation, and receives a one-year term for each of the misdemeanors, to be served consecutively. Under Ervin's interpretation, those five years spent in jail on a misdemeanor, if spent without committing any crimes, might be used as the wash-out period for an earlier class C felony. It is conceivable the legislature might have intended this result, for the offender would still have avoided committing any crime for the five-year period. Because it is conceivable, the result is not absurd. *See* BLACK'S LAW DICTIONARY 10 (9th ed. 2009) ("absurdity" defined as "[t]he state or quality of being *grossly* unreasonable; esp., an interpretation that would lead to an unconscionable result, esp. one that . . . the drafters *could not* have intended" (emphasis added)). We may concede, however, that it is unlikely the legislature intended such a consequence.

¶16 Ervin, in turn, puts forth a result of the State's interpretation that is also unlikely to have been intended by the legislature. Under the State's definition, *any* time a person is incarcerated he or she is not "in the community." Therefore, it would logically follow that a person arrested and booked into jail is not "in the community," even if charges are never filed and the arrest was mistaken or wrongful. Here, too, it is conceivable the legislature determined any brush with the law should interrupt the wash-out period, but we also find that result unlikely. Though both parties' interpretations could lead to unlikely results, the circumstances in which Ervin's interpretation will lead to unlikely results (i.e., all or a substantial portion of the offender's wash-out period is spent in jail on a misdemeanor) are far less frequent than are the circumstances in which the State's interpretation will lead to unlikely results (i.e., a person spends a small amount of time in jail during the washout period). This canon of construction, therefore, also favors Ervin's interpretation.

¶17 Finally, the State cites to *State v. Blair*, 57 Wn. App. 512, 789 P.2d 104 (1990), arguing that its reasoning is influential in interpreting the language in this case. In *Blair*, the defendant had been convicted of a class C felony in 1981 and, as part of the sentence, received three years' probation. *Id.* at 513-14. In 1984, Blair was found to have violated probation and sentenced to a 90-day jail term. *Id.* at 514. His probation was extended for another three years, and he again violated probation in 1987 and was sentenced to another 90-day jail term. *Id.* In 1989, Blair was sentenced for three new crimes. *Id.* at 513. At sentencing, Blair argued, and the trial court agreed, that the prior class C felonies had washed out. *Id.* at 514. The Court of Appeals reversed, holding that confinement on the felony probation violation reset the trigger date in that it was "confinement pursuant to a felony conviction." *Id.* at 515-17.

¶18 The reasoning of *Blair* does not support the State's argument. *Blair* was decided solely by interpreting the trigger clause. In the present case, Ervin's incarceration does not implicate the trigger clause, for that clause speaks only to *felony* convictions. RCW 9.94A.525(2)(c) ("since the last date of release from confinement . . . pursuant to a *felony* conviction" (emphasis added)). Under the logic of *Blair*, Ervin's confinement was "pursuant to a misdemeanor" since it was for a violation of probation that was part of a misdemeanor conviction, but that does not reset the trigger date. Only confinement pursuant to a *felony* conviction does so.

¶19 Any lingering doubts about the correctness of Ervin's interpretation are allayed by the legislature's acquiescence in it. We presume the legislature is "familiar with judicial interpretations of statutes and, absent an indication it intended to overrule a particular interpretation, amendments are presumed to be consistent with previous judicial decisions." *State v. Bobic*, 140 Wn.2d 250, 264, 996 P.2d 610 (2000). In *Nichols*, a 2004 case, the Court of Appeals based its holding on an interpretation of the phrase "in the community." *Nichols*, 120 Wn. App. at 432.

Nichols had been released from confinement on a felony conviction in 1989 and was later incarcerated for 20 days based on misdemeanors taking place in 1992 and 1993. *Id.* at 427-28. The question before the court was whether incarceration for those misdemeanors interrupted the "five consecutive years in the community without being convicted of any felonies," former RCW 9.94A.360(2) (1990). *Nichols*, 120 Wn. App. at 431-32. The Court of Appeals squarely rejected the argument that presence in jail precludes a person from being "in the community" for purposes of the wash-out provisions.[2] *Id.* at 432. From the time that *Nichols* was decided, the legislature has amended RCW 9.94A.525 six times, *see* LAWS OF 2010, ch. 274, § 403; LAWS OF 2008, ch. 231, § 3; LAWS OF 2007, ch. 199, § 8; LAWS OF 2007, ch. 116, § 1; LAWS OF 2006, ch. 128, § 6; LAWS OF 2006, ch. 73, § 7, but has in no way altered the "in the community" language interpreted by *Nichols*. This legislative acquiescence in the *Nichols* interpretation of the term strongly favors Ervin's interpretation of the statute.

¶20 In sum, we find the plain language of RCW 9.94A.525(2)(c) allows for multiple reasonable interpretations. Applying relevant canons of statutory construction, we discern a legislative intent favoring Ervin's interpretation of the statute. Accordingly, we hold that time spent in jail pursuant to violation of probation stemming from a misdemeanor does not interrupt the wash-out period.

## CONCLUSION

¶21 Because Ervin, for a period of five years, did not commit any crime subsequently resulting in a conviction, and because Ervin was not confined pursuant to a felony conviction during that period, his prior class C felonies washed out and should not have been included in his

---

[2] It is true that *Nichols* would come out differently under the present statute because Nichols's commission and conviction of two misdemeanors would violate the present continuity/interruption clause. That fact does not, however, alter the interpretation of the term "in the community."

offender score. We therefore reverse the Court of Appeals and remand the case for resentencing.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, SANDERS, CHAMBERS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.