FILED
COURT OF APPEALS
DIVISION II

2014 NOV 13 AM 8: 59

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45016-0-II |
| Respondent, | |
| v. | |
| | UNPUBLISHED OPINION |
| TROY ARNOLD MUONIO, | |
| Appellant. | |

MAXA, J. — Troy Muonio appeals his convictions for third degree child molestation, communication with a minor for immoral purposes, and two counts of violating a pre-arraignment sexual assault protection order (SAPO). He also challenges the entry of two post-conviction SAPOs. Muonio's convictions arise from his interaction with two teenage girls – MSE and DNR – in a hotel hot tub.

We hold that (1) defense counsel was not ineffective for failing to assert the corpus delicti rule to preclude his conviction for third degree child molestation because that rule is inapplicable to statements Muonio made about his age before committing the crime, (2) sufficient evidence supports Muonio's conviction for communication with a minor for immoral purposes, (3) defense counsel was ineffective for not challenging the applicability of the pre-arraignment SAPO because it had expired at Muonio's arraignment, (4) the trial court did not have authority to issue a post-conviction SAPO protecting MSE because she was not the victim

of a sex offense, and (5) the expiration date on the SAPO protecting DNR does not exceed the statutory period.

Accordingly, we (1) affirm Muonio's convictions for third degree child molestation and communication with a minor for immoral purposes, (2) reverse and vacate Muonio's two convictions for violating the pre-arraignment SAPO protecting MSE, (3) vacate the post-conviction SAPO protecting MSE, (4) affirm the post-conviction SAPO protecting DNR, and (5) remand for resentencing in light of our reversal of two of Muonio's convictions.

FACTS

*Hot Tub Incident*

In January 2011, Muonio encountered MSE and DNR in the pool area of a hotel in Battle Ground. At the time, MSE was 16 and DNR was 15.

Muonio struck up a conversation with MSE in the hot tub, and DNR soon joined. Muonio told the girls he was 23 years old. In the course of the conversation, Muonio commented on the girls' bodies, asked them whether they had ever been raped, suggested that they should show him their breasts, and asked them whether they would take naked pictures of each other for $100. He also dared MSE to touch DNR's breast. Muonio at one point grabbed MSE's hand and placed it on DNR's breast. MSE and DNR soon left the hot tub and later reported the incident to the police.

The State charged Muonio with indecent liberties with forcible compulsion against DNR, third degree child molestation of DNR, communication with a minor for immoral purposes concerning DNR, and fourth degree assault with sexual motivation of MSE. The State later dismissed the fourth degree assault charge involving MSE.

2

*Pre-Arraignment SAPO Violations*

At Muonio's probable cause hearing, the court issued a pre-arraignment SAPO prohibiting Muonio from having contact with MSE, including coming within 1,000 feet of MSE's place of employment. The trial court provided an expiration date of 10 years from the date of the order. No such order was issued protecting DNR at that time. At Muonio's arraignment, the trial court issued a pre-trial SAPO protecting DNR, but took no action regarding the pre-arraignment SAPO protecting MSE.

In May and again in June of 2012, Muonio had contact with MSE when he went through the drive-through window at a fast food restaurant where MSE worked. The State subsequently charged Muonio with two counts of violating the pre-arraignment SAPO based on these contacts.

*Trial and Post-Conviction SAPOs*

The case proceeded to a bench trial. One of the elements of third degree child molestation is that the defendant be more than 48 months older than the victim. RCW 9A.44.089(1). The only evidence the State presented regarding Muonio's age was his statements to MSE and DNR. Defense counsel did not object to these statements as inadmissible or argue that the evidence was insufficient under the corpus delicti rule.

After trial, the court dismissed the indecent liberties charge but found Muonio guilty of third degree child molestation, communication with a minor for immoral purposes, and violating the pre-arraignment SAPO on two separate occasions. The court then issued post-conviction SAPOs protecting both MSE and DNR. Muonio objected to the SAPO protecting MSE because she was not a victim of a sex offense. Muonio appeals his convictions and challenges the

3

validity of the post-conviction SAPO protecting MSE and the duration of the post-conviction SAPO protecting DNR.

## ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL – CORPUS DELICTI

Muonio argues that under the corpus delicti rule, his statements to MSE and DNR that he was 23 years old could not be used to establish his age without independent corroborating evidence, and his counsel was ineffective for not raising the corpus delicti issue. Because his age was an essential element of third degree child molestation, Muonio requests that we reverse that conviction. Assuming without deciding that the corpus delicti rule applied here, we hold that Muonio's counsel was not ineffective for failing to raise the corpus delicti issue.

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have differed. *Grier*, 171 Wn.2d at 34. Reasonable probability in this context means a probability sufficient to undermine confidence in the outcome. *Grier*, 171 Wn.2d at 34.

When reviewing an ineffective assistance of counsel claim, we begin with the presumption that counsel's assistance was effective. *Grier*, 171 Wn.2d at 33. This presumption continues until the defendant shows in the record the absence of legitimate strategic or tactical reasons supporting his counsel's conduct. *Grier*, 171 Wn.2d at 33-34.

4

### 1. Corpus Delicti Rule

Under the corpus delicti doctrine, the State may not rely on the defendant's statement to establish an element of a crime without also presenting independent evidence that corroborates that statement. *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006). In determining the sufficiency of independent evidence under the corpus delicti rule, we assume the truth of the State's evidence and view all reasonable inferences therefrom in the light most favorable to the State. *State v. Aten*, 130 Wn.2d 640, 658, 927 P.2d 210 (1996). The independent evidence need not be sufficient to establish the element beyond a reasonable doubt or even by a preponderance of the evidence. *Aten*, 130 Wn.2d at 656. The evidence only must provide "prima facie corroboration" of the defendant's statement. *Brockob*, 159 Wn.2d at 328.

However, the corpus delicti corroboration requirement does not apply to statements a defendant makes before or during the commission of a crime. *State v. Witherspoon*, 171 Wn. App. 271, 296-97, 286 P.3d 996 (2012). The rationale for this rule is that such statements do not contain the inherent weaknesses of confessions or admissions made after the fact. *State v. Pietrzak*, 110 Wn. App. 670, 681, 41 P.3d 1240 (2002). The question here is whether Muonio's statement that he was 23 was made before the act that constituted third degree child molestation – placing MSE's hand on DNR's breast.

### 2. Timing of Statements

The only evidence the State presented that Muonio was at least 48 months older than DNR was MSE's and DNR's testimony that Muonio told them he was 23, and the State presented no independent corroborating evidence. Arguably, defense counsel should have

5

objected to that evidence or raised the corpus delicti issue in a motion to dismiss based on sufficiency of the evidence. But even assuming that the failure to do so was deficient, we hold that the failure to raise the issue caused no prejudice because there is sufficient evidence that Muonio's statement about his age was made before the child molestation. Therefore, the trial court would have denied the motion to dismiss.

MSE testified that at first she was alone in the hot tub with Muonio. The State then asked if Muonio told her how old he was, and MSE testified that Muonio told her that he was 23. MSE then testified that DNR joined them in the hot tub. The chronology of the testimony suggests that Muonio made the statement about his age when he first talked to MSE.

DNR testified that she joined MSE and Muonio in the hot tub, and that he started asking if they wanted to play games and "it just got really creepy." Report of Proceedings (RP) (Dec. 17, 2012) at 118. The State then asked DNR if Muonio told her his age, and she testified that Muonio told her he was 23. Again, the chronology of the testimony suggests that Muonio made the statement about his age before the breast touching incident.

The State never specifically asked either MSE or DNR when Muonio told either girl his age. But neither MSE nor DNR gave any indication that the statement was made *after* the breast touching incident. And the testimony about the chronology of events suggests that Muonio told the girls his age during the preliminary stages of their conversation rather than after the touching. Similarly, the general chronology of events shows that the girls left the hot tub fairly soon after the touching. It would have been reasonable for the trial court to infer from these circumstances that Muonio made the statement about his age before the breast touching incident.

Based on this evidence, we hold that there is a reasonable probability that the trial court would have found that the statement was made before the incident and ruled that the corpus delicti rule was inapplicable. Muonio has the burden of showing prejudice in order to prevail on his ineffective assistance of counsel claim. *See Grier*, 171 Wn.2d at 32-33. Here, there was sufficient evidence to support a finding that the statement was made before the incident. There is no way for Muonio to prove that the trial court would have ignored this evidence and applied the corpus delicti rule.

We hold that Muonio's ineffective assistance of counsel claim regarding his conviction for third degree child molestation fails. Accordingly, we affirm that conviction.

B.    SUFFICIENCY OF EVIDENCE – IMMORAL PURPOSE

Muonio argues that there is insufficient evidence to support his conviction for communication with a minor for immoral purposes because the State did not prove that his communications with DNR involved unlawful sexual conduct. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182, 185 (2014). In evaluating a sufficiency of the evidence claim, we assume the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Homan*, 181 Wn.2d at 106. We defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106.

Former RCW 9.68A.090(1) (2006)[1] makes it a crime to communicate with a minor for "immoral purposes." The statute does not define "immoral purposes," but the case law establishes that the phrase refers to unlawful sexual conduct. *State v. Hosier*, 157 Wn.2d 1, 9, 133 P.3d 936 (2006); *State v. Luther*, 65 Wn. App. 424, 425, 830 P. 2d 674 (1992). The issue here is whether the State presented sufficient evidence that Muonio's communications with DNR referred to unlawful sexual conduct.

The State asserts two different grounds for the conviction. First, the State asserts that Muonio suggested that MSE touch DNR in a sexual manner, which constituted third degree child molestation in violation of RCW 9A.44.089. Muonio argues that telling MSE to touch DNR did not concern *unlawful* sexual conduct because the State's evidence was insufficient to establish his age due to the corpus delicti rule.[2] But as discussed above, the corpus delicti rule did not bar the evidence of Muonio's age. Therefore, there was sufficient evidence of an immoral purpose on this basis.

Second, the State asserts that Muonio asked the girls to take naked pictures in exchange for money, which would involve possession of a depiction of a minor engaged in sexually explicit conduct in violation of RCW 9.68A.070. Muonio argues that MSE's vague testimony about naked pictures did not establish that he actually asked them to take naked pictures. But the evidence shows that DNR – the victim identified in the information – expressly testified that

[1] RCW 9.68A.090 was amended in 2013. However this amendment does not affect the subsection cited. LAWS OF 2013, ch. 302, §1.

[2] Because his trial counsel did not raise corpus delicti, Muonio once again presents this issue in the form of an ineffective assistance of counsel claim.

Muonio "asked us if we would take pictures for money." RP (Dec. 17, 2012) at 119. Based on the testimony of MSE and DNR, there was sufficient evidence of an immoral purpose on this basis as well.[3]

We hold that there was sufficient evidence to support Muonio's conviction for communicating with DNR for immoral purposes. Accordingly, we affirm that conviction.

C.    PRE-ARRAIGNMENT SAPO VIOLATION CONVICTIONS

Muonio argues that the pre-arraignment SAPO protecting MSE was inapplicable to his violations because it expired at arraignment by operation of statute. As a result, Muonio claims that his counsel was ineffective for not objecting to admission of the SAPO into evidence. We agree.[4]

After Muonio was arrested, the trial court issued a SAPO prohibiting him from having contact with MSE for 10 years. RCW 7.90.150(1)(a) provides that a court may issue a SAPO prohibiting any person charged with or arrested for a sex offense and released from custody from having contact with the victim. But RCW 7.90.150(4) provides that if the court issues a SAPO prior to charging, it expires at arraignment (or within 72 hours if charges are not filed). As a

_____

[3] Muonio also argues that there was insufficient evidence that the naked pictures discussed were in fact sexual in nature, pointing out that "naked pictures" could be a non-sexual photograph of a bare arm. But DNR testified that "when we asked what kind of pictures . . . [Muonio] implied that they were bad pictures." RP (Dec. 17, 2012) at 119. And from DNR's testimony and the overall context of the conversation, the court reasonably could have inferred that Muonio was asking for sexually explicit pictures.

[4] Muonio also argues that the pre-arraignment SAPO protecting MSE was void from its inception because MSE was not a victim of the charged crime and the SAPO's 10-year duration violated the authorizing statute. Because we hold that the SAPO had expired before Muonio had contact with MSE, we do not address these issues.

result, the pre-arraignment SAPO expired when Muonio was arraigned, and it was inapplicable when he subsequently had contact with MSE.

At trial, defense counsel should have objected to admission of the inapplicable SAPO. Therefore, counsel's performance was deficient. The failure to object prejudiced Muonio because under RCW 7.90.150(4) the trial court would have ruled that the SAPO was inadmissible and dismissed the two SAPO violation charges.

The State argues that Muonio could not have challenged the pre-arraignment SAPO under the "collateral bar rule," which generally prevents a party from challenging the validity of a court order in a proceeding for violation of that order. *City of Seattle v. May*, 171 Wn.2d 847, 852, 256 P.3d 1161 (2011). However, the collateral bar rule does not preclude challenges to the *applicability* of an order. *May*, 171 Wn.2d at 855. The trial court's gate-keeping role includes excluding orders that are inapplicable to the defendant. *May*, 171 Wn.2d at 854. Here, the SAPO was inapplicable after arraignment by operation of RCW 7.90.150(4). As a result, Muonio's counsel could have challenged the order at trial.

We hold that under RCW 7.90.150(4) the pre-arraignment SAPO expired when Muonio was arraigned, and therefore his counsel's failure to challenge the applicability of the SAPO was deficient and prejudiced him. Accordingly, we reverse and vacate Muonio's two convictions for violating that SAPO and remand for resentencing.

D.    CHALLENGES TO THE POST-CONVICTION SAPOs

Muonio argues that (1) the trial court had no power to issue the post-conviction SAPO protecting MSE because she was not the "victim" of a sex offense for which a SAPO could be issued, and (2) the post-conviction SAPOs had expiration dates beyond the period required by statute. We agree with the former argument but reject the latter.

Under RCW 7.90.150(6)(a), the trial court at sentencing may prohibit a defendant convicted of a sex offense from having contact with "the victim" of that offense, in which case a SAPO will be issued subject to the duration requirements of RCW 7.90.150(6)(c). Whether the court is authorized to issue a post-conviction SAPO protecting a particular person and the duration of any such SAPO both depend on statutory interpretation. Statutory interpretation involves a question of law that we review de novo. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010).

1.    Victim Status

Muonio challenges the post-conviction SAPO protecting MSE on the grounds that MSE was not a victim of any crime for which the court could issue a SAPO. RCW 7.90.150(6)(a) authorizes issuance of SAPOs protecting "the victim" of various offenses, including third degree child molestation and communication with a minor for immoral purposes. Notably, ch. 7.90 RCW does not define "victim." *See* RCW 7.90.010. However, a common sense understanding of that term in the context of a sex offense is the person who the defendant is charged with and convicted of offending against.

11

Muonio was charged with and convicted of two crimes that can support a SAPO under RCW 7.90.150(6)(a). He was charged with and convicted of communication *with DNR* for immoral purposes. MSE was not referenced in this count of the information. As a result, we hold that MSE cannot be a "victim" with regard to this crime.

Muonio was also charged with third degree child molestation *of DNR*. Again, MSE was not the victim of this crime. In fact, Muonio could not have been charged with third degree child molestation of MSE because she was 16, and this crime requires that the sexual contact be with a person under the age of 16. RCW 9A.44.089. However, the information for the third degree child molestation charge did mention MSE, alleging that Muonio caused MSE to have sexual contact with DNR.

The State acknowledges that MSE was not the direct victim of child molestation, characterizing her as the "conduit" through which Muonio completed the crime. Br. of Respondent at 19. But the State argues for a more expansive definition of "victim" that takes into account the harmful effects on a minor used as such a conduit. Br. of Respondent at 19. The State argues that the SAPO was valid because MSE "was victimized" as a result of the crime. Br. of Respondent at 20.

We reject the State's argument for three reasons. First, it is inconsistent with the plain statutory language. RCW 7.90.150(6)(a) allows issuance of a SAPO to protect "the victim" of a sex offense, not anyone "victimized" by a crime. We construe unambiguous criminal statutes strictly and will not add words to a statute under the guise of construction. *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003). Read plainly, the term "victim" refers to the direct victim of the crime charged. Construing "victim" more broadly changes its meaning.

12

Second, even if we were to assume that the statutory language is ambiguous and move beyond its plain meaning, there is no evidence that the legislature intended a broad reading of "victim" for post-conviction SAPOs. Neither the legislative history nor the statute's declared purpose show any intent to protect those indirectly harmed by sex crimes. *See* FINAL B. REP. on H.B. 2576, 59th Leg., Reg. Sess. (Wash. 2006); RCW 7.90.005. In fact, the State points to no authority and develops no argument on the question of legislative intent at all. Under the rule of lenity, we must construe ambiguous criminal statutes in favor of the defendant in the absence of evidence indicating contrary legislative intent. *State v. Rice*, 180 Wn. App. 308, 313, 320 P.3d 723 (2014). Had the legislature intended to allow courts to issue SAPOs protecting third parties who are used as conduits for the commission of the crime, it could have so provided.

Third, expanding the concept of "victim" to include others "victimized" by the crime would require courts to engage in an analysis not contemplated by the statutory language. Sex crimes have many indirect victims, including family members and other people close to both the direct victims and the defendant. *See, e.g.*, RP (May 24, 2013) at 93 (judge noting at sentencing "there are victims all over the place . . . on both sides of this process"). The State appears only to be asking the court to define "victim" to include proximately close indirect victims, such as other people used as conduits to complete a sex crime. Yet even this narrow conceptual expansion of the word "victim" would create a vague, fact-dependent distinction. We are wary of such an expansion without clearer statutory direction or precedent.

Accordingly, we hold that the "victim" of a sex crime is the direct victim only. Here, that means construing "victim" as meaning the specific person described by the statute the defendant was convicted of violating. Because the trial court was not authorized to issue the SAPO protecting MSE, we vacate that order.

2. Duration

Muonio challenges both post-conviction SAPOs on the grounds that their durations exceed the effective period authorized by RCW 7.90.150. We disagree.

According to RCW 7.90.150(6)(c), post-conviction SAPOs "shall remain in effect for a period of two years following the expiration of any sentence of imprisonment and subsequent period of community supervision, conditional release, probation, or parole." On May 24, 2013, the trial court sentenced Muonio to eight months confinement (with credit for time served) and 12 months community custody for felony third degree child molestation. Muonio was released from confinement for his felony conviction on July 1, 2013, and therefore his subsequent period of community custody ended on July 1, 2014. According to Muonio, this means that the correct expiration date for the SAPOs is July 1, 2016, two years from the end of his sentence. Muonio argues that the trial court erred because it inserted January 19, 2017 as the expiration date of the SAPOs.

However, Muonio's conviction for child molestation was not his only conviction. The trial court also imposed a 24-month suspended sentence for the gross misdemeanor of communication with a minor for immoral purposes. That sentence will not expire until May 24, 2015. The State argues that the misdemeanor sentence should have extended the SAPOs' expiration date to May 24, 2017.

14

Muonio argues that both SAPOs were based solely on his third degree child molestation conviction. As Muonio points out, the orders on their face state "Criminal/Felony" and communication with a minor for immoral purposes is a gross misdemeanor, not a felony. Clerks Papers at 68. Further, the ordered expiration date, January 19, 2017, is 20 months (the length of his sentence) plus two years from the date of sentencing. This indicates that the court did not base the expiration date on the communication with a minor for immoral purposes conviction and sentence.

But RCW 7.90.150(6)(a) requires that "[w]hen a defendant is found guilty of . . . any violation of RCW 9.68A.090 [communication with a minor for immoral purposes] . . . and a condition of the sentence restricts the defendant's ability to have contact with the victim, the condition shall be recorded as a sexual assault protection order." Muonio's sentence for his gross misdemeanors, including communication with a minor for immoral purposes, includes a condition that he not have contact with DNR. Therefore, under RCW 7.90.150(6)(a), the SAPO protecting DNR must also relate to this offense.

Because Muonio's 24-month suspended sentence expires on May 24, 2015, the expiration date on the SAPO should have been May 24, 2017, not January 19, 2017. However, the State did not cross appeal seeking an extended expiration date. Because we reject Muonio's argument that the expiration date listed on the face of the SAPO protecting DNR exceeds the statutory period, we affirm entry of that SAPO.

We affirm Muonio's convictions for third degree child molestation and communication with a minor for immoral purposes, reverse and vacate Muonio's two convictions for violating the pre-arraignment SAPO, vacate the post-conviction SAPO protecting MSE, affirm the post-

conviction SAPO protecting DNR, and remand for resentencing in light of the reversal of two of Muonio's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
WORSWICK, P.J.

_____
LEE, J.