# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79039-1-I |
| | ) | consolidated with |
| Appellant, | ) | No. 79135-4-I |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| S.M.G., JR., d.o.b. 01/25/02, | ) | |
| | ) | FILED:  July 1, 2019 |
| Respondent. | ) | |
| | ) | |

VERELLEN, J. — The State challenges the juvenile court's calculation of S.M.G.'s criminal history. Specifically, the State contends the court erred in excluding S.M.G.'s pending deferred disposition. This case turns on the definition of criminal history contained in RCW 13.40.020(8)(b) of the Juvenile Justice Act (JJA). Because the plain meaning of section (8)(b) requires the court to exclude all deferred dispositions, including pending deferred dispositions, the court did not err when it excluded S.M.G.'s pending deferred disposition from his criminal history.

Therefore, we affirm.

## FACTS

In March 2018, the State charged S.M.G. with unlawful possession of methamphetamine with intent to manufacture or deliver and one count of

misdemeanor harassment.[1] On September 17, 2018, S.M.G. pleaded guilty to the possession charge in exchange for the State dismissing the harassment charge.[2]

At the time of imposing disposition, S.M.G. had a prior felony adjudication from 2016 and a pending deferred disposition from 2017. Over the State's objection,[3] the juvenile court calculated S.M.G.'s criminal history as 1 based on the 2016 adjudication.[4] The juvenile court declined the State's request to count the 2017 deferred disposition as criminal history.[5] The juvenile court sentenced S.M.G. to a 15 to 36 week standard range commitment at the Juvenile Rehabilitation Administration.[6] At the same hearing, the court also revoked the 2017 deferred disposition.[7]

The State appeals.

---

[1] Clerk's Papers (CP) at 133-34.

[2] CP at 125-36.

[3] The court sentenced S.M.G. on September 17, 2018. On October 5, 2018, the court entered an order amending the September 2018 disposition order to reflect the State's objection to the court's calculation of S.M.G.'s offender score. CP at 140. The State appeals from the October 2018 order.

[4] CP at 137.

[5] Report of Proceedings (RP) (Sept. 17, 2018) at 44.

[6] CP at 137-38. If the court had calculated S.M.G.'s criminal history at 2 instead of 1, the standard range would have been 52 to 65 weeks.

[7] CP at 135.

## ANALYSIS

The State contends the juvenile court miscalculated S.M.G.'s criminal history. This case turns exclusively on RCW 13.40.020(8). Statutory interpretation is a question of law we review de novo.[8]

When interpreting a statute, our "'objective is to determine the legislature's intent.'"[9] The first step is to examine the plain meaning of a statute. To determine the plain meaning, we must look to "the text of the statutory provision in question, as well as 'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'"[10]

"[I]f the meaning of a statute is plain on its face, we 'give effect to that plain meaning.'"[11] But if "the statute is susceptible to more than one reasonable interpretation, it is ambiguous."[12] If a statute is ambiguous, we may look to "'statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.'"[13]

---

[8] State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010).

[9] Id. (quoting State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)).

[10] Id. (quoting Jacobs, 154 Wn.2d at 600).

[11] Id. (internal quotation marks omitted) (quoting Jacobs, 154 Wn.2d at 600).

[12] Id. (internal quotation marks omitted) (quoting Christensen v. Ellsworth, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

[13] Id. (quoting Christensen, 162 Wn.2d at 373).

Under the JJA, in certain cases, "[t]he juvenile court may. . . continue the case for disposition for a period not to exceed one year from the date the juvenile is found guilty."[14] Any juvenile who agrees to a deferral of disposition shall:

> (a) Stipulate to the admissibility of the facts contained in the written police report;
>
> (b) Acknowledge that the report will be entered and used to support a finding of guilt and to impose a disposition if the juvenile fails to comply with terms of supervision;
>
> (c) Waive the following rights to: (i) A speedy disposition; and (ii) call and confront witnesses; and
>
> (d) Acknowledge the direct consequences of being found guilty and the direct consequences that will happen if an order of disposition is entered.[15]

"Following the stipulation, acknowledgment, waiver, and <u>entry of a finding or plea of guilt</u>, the court shall defer entry of an order of disposition of the juvenile."[16] During the deferral period, the juvenile "shall be placed under community supervision" and "[t]he court may impose any conditions of supervision that it deems appropriate."[17] At the conclusion of the deferral period, "[i]f the court finds the juvenile is entitled to dismissal of the deferred disposition . . . the juvenile's <u>conviction</u> shall be vacated and the court shall dismiss the case with prejudice."[18]

---

[14] RCW 13.40.127(2).

[15] RCW 13.40.127(3).

[16] RCW 13.40.127(4) (emphasis added).

[17] RCW 13.40.127(5).

[18] RCW 13.40.127(9)(b) (emphasis added).

A deferred disposition may affect the court's calculation of the juvenile's criminal history at sentencing for a future offense. Generally, under the JJA, "[t]he standard range disposition for each offense is determined by . . . the prior adjudications and . . . the current offense category."[19] To calculate the juvenile's criminal history, the juvenile court is directed to count "[e]ach prior felony adjudication . . . as one point" and "[e]ach prior violation, misdemeanor, and gross misdemeanor adjudication . . . as 1/4 point."[20]

> "Criminal history" includes all criminal complaints against the respondent for which, prior to the commission of a current offense:
>
>     (a) The allegations were found correct by a court. If a respondent is convicted of two or more charges arising out of the same course of conduct, only the highest charge from among these shall count as an offense for the purposes of this chapter; or
>
>     (b) The criminal complaint was diverted by a prosecutor pursuant to the provisions of this chapter on agreement of the respondent and after an advisement to the respondent that the criminal complaint would be considered as part of the respondent's criminal history. A successfully completed deferred adjudication that was entered before July 1, 1998, or a deferred disposition shall not be considered part of the respondent's criminal history.[21]

The State contends, under the final sentence of section (8)(b), the juvenile court is required to exclude only successfully completed deferred dispositions from

---

[19] RCW 13.40.0357(3) ("Juvenile offender sentencing standards").

[20] RCW 13.40.0357(2) ("Juvenile offender sentencing standards").

[21] RCW 13.40.020(8) (emphasis added). In 1997, the legislature amended the JJA to replace deferred adjudications with deferred dispositions. Under former RCW 13.40.125 (1994), the juvenile court had the authority "to continue the case for adjudication for a period not to exceed one year." Unlike a deferred disposition, prior to granting a deferred adjudication, the juvenile court did not find the juvenile guilty.

a juvenile's criminal history. S.M.G. argues the juvenile court is required to exclude all deferred dispositions.

When analyzing the plain meaning of a statute, we may rely on the "traditional rules of grammar."[22] In the final sentence of RCW 13.40.020(8)(b), the legislature used the singular article, "a," in front of "successfully completed deferred adjudication" and again in front of "deferred disposition."

> Because articles have a demonstrative value, the meaning of a phrase may shift depending on the article used. For example, <u>an officer and gentleman escorted Princess Grace to her car</u> suggests (though ambiguously) that the escort was one man with two descriptive characteristics. But <u>an officer and a friend escorted Princess Grace to her car</u> suggests that two people acted as escorts.[23]

Here, the legislature's use of the singular article before each direct object indicates deferred adjudications and deferred dispositions are distinct concepts with different consequences.

The placement of the phrase "successfully completed" further illustrates the legislature's intent to treat deferred dispositions differently than deferred adjudications. "Successfully completed" is an adverbial phrase. Generally, adverbs, or adverbial phrases, should "be placed as near as possible to the word it is intended to modify."[24] "Successfully completed" clearly modifies the

---

[22] <u>State v. Bunker</u>, 169 Wn.2d 571, 578, 238 P.3d 487 (2010).

[23] THE CHICAGO MANUAL OF STYLE § 5.76, at 250 (University of Chicago Press, 17th ed. 2017).

[24] <u>Id.</u> § 5.167, at 277.

immediately following direct object, "deferred adjudication." But "successfully completed" does not modify "deferred disposition."

Under the State's analysis, we would be required to either delete the second "a" from the sentence, e.g., "A successfully completed deferred adjudication or a deferred disposition," or add a second "successfully completed" into the sentence, e.g., "A successfully completed deferred adjudication or successfully completed deferred disposition." We decline to rewrite the sentence drafted by the legislature.[25] Under the traditional rules of grammar, the plain language of the final sentence of section (8)(b) requires the juvenile court to exclude all pending deferred dispositions from a juvenile's criminal history.

The State contends this interpretation contradicts the language in RCW 13.40.020(8)(a) and RCW 13.40.127. Although we do not apply the rules of grammar "if other factors, such as context and language in related statutes, indicate contrary legislative intent or if applying the rule would result in an absurd or nonsensical interpretation," the surrounding statutes do not reveal a contradictory legislative intent.[26]

When calculating a juvenile's criminal history, RCW 13.40.020(8)(a) directs the juvenile court to include "all criminal complaints against the respondent for

---

[25] See State v. Delgado, 148 Wn.2d 723, 727, 63 P.3d 792 (2003) ("We cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language.").

[26] Bunker, 169 Wn.2d at 578.

which, prior to the commission of a current offense . . . [t]he allegations were found correct by a court." The State argues section (8)(a) requires the juvenile court to include pending deferred dispositions in a juvenile's criminal history. But "'we interpret a statute to give effect to all language, so as to render no portion meaningless or superfluous.'"[27] The State's rationale is that a pending deferred disposition is an allegation found correct by a court because the juvenile must plead guilty before the court may grant a deferred disposition. But this rationale conflicts with the phrase in the final sentence of section (8)(b), which excepts "a deferred disposition" from a juvenile's criminal history.

Although a pending deferred disposition technically falls under section (8)(a) because the juvenile must plead guilty before the court may grant a deferred disposition, section (8)(b) expressly excepts deferred dispositions from a juvenile's criminal history. Section (8)(b) includes guilty verdicts following a bench trial and guilty pleas entered outside the context of a deferred disposition. It is not absurd for the legislature to narrowly except deferred dispositions from section (8)(a). And the State's interpretation of section (8)(a) would render section (8)(b) superfluous as to deferred dispositions.

RCW 13.40.127(9)(c) provides, in part, "[a] deferred disposition shall <u>remain a conviction</u> unless the case is dismissed and the conviction is vacated pursuant

---

[27] <u>Ervin</u>, 169 Wn.2d at 823 (quoting <u>Rivard v. State</u>, 168 Wn.2d 775, 783, 231 P.3d 186 (2010)).

to (b) of this subsection or sealed pursuant to RCW 13.50.260."[28] The State argues the legislature's general categorization of deferred dispositions as convictions demonstrates the legislature's intent to include pending deferred dispositions in a juvenile's criminal history. But the legislature's reference to deferred dispositions as convictions does not necessarily require the court to consider pending deferred dispositions in a juvenile's criminal history.

The State's argument appears to assume that a new charge during the supervision period for a pending deferred disposition will automatically result in revocation of the pending deferred disposition. But the court has discretion, when a juvenile violates the conditions of a pending deferred disposition, to impose sanctions without revocation. RCW 13.40.127(7)(b) provides:

> If the court finds the juvenile failed to comply with the terms of the deferred disposition, the court may:
>
> (i) Revoke the deferred disposition and enter an order of disposition; or
>
> (ii) Impose sanctions for the violation.[29]

If the court elects to impose sanctions, rather than revoking the deferred disposition, it would be inconsistent with the purpose of the deferred disposition statutory scheme to automatically include a deferred disposition in the juvenile's criminal history.

---

[28] (Emphasis added.)

[29] (Emphasis added.)

The State's argument also ignores the purpose of the JJA.

Although the JJA seeks a balance between the poles of rehabilitation and retribution, the purposes of accountability and punishment are tempered by and at times must give way to the purposes of responding to the needs of the juvenile. Moreover, unlike the Sentencing Reform Act of 1981 applicable in adult criminal proceedings, juvenile restitution is remedial, not punitive.[30]

This remedial policy is reflected in RCW 13.40.127(2), which provides, "[i]n all cases where the juvenile is eligible for a deferred disposition," juvenile courts are required to apply "a strong presumption that the deferred disposition will be granted." Consistent with this remedial policy, it is not absurd for the legislature to exclude pending deferred dispositions from a juvenile's criminal history. The juvenile is held accountable because they must plead guilty before disposition will be deferred. At the same time, this accountability is balanced by exclusion of a pending deferred disposition from the juvenile's criminal history.

Here, at the same hearing, after excluding the pending deferred disposition from S.M.G.'s criminal history for the disposition on the possession offense, the trial court revoked the pending 2017 deferred disposition. The State argues it would be odd for the calculation of a juvenile's criminal history in these circumstances to depend on the chronology of the disposition on the possession offense and revocation of the pending deferred disposition, especially when they

---

[30] State v. J.A., 105 Wn. App. 879, 886, 20 P.3d 487 (2001) (emphasis added).

are part of the same hearing. But it was the prosecutor who proposed the order of events.[31]

If the legislature wanted the juvenile court to exclude only successfully completed deferred dispositions from criminal history, the legislature could have included "successfully completed" immediately before "deferred disposition" in the final sentence of RCW 13.40.020(8)(b). Absent such language, the juvenile court is bound to the plain language of the section. And under the plain language, RCW 13.40.020(8) requires the juvenile court to exclude all pending deferred dispositions from a juvenile's criminal history.[32]

We conclude the juvenile court correctly calculated S.M.G.'s offender score. Therefore, we affirm.

WE CONCUR:

---

[31] RP (Sept. 17, 2018) at 2 ("We are here for several motions as well as the plea and disposition. I would propose that we do the scoring motion first.").

[32] Because the meaning of section (8)(b) is plain on its face, we give effect to that meaning. We decline to consider the legislative history submitted by the State.