**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84692-2-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| SIMON GERARDO CRUZ-AMADO, | |
| Appellant. | |

MANN, J. — Simon Gerardo Cruz-Amado was convicted of assault in the second degree, residential burglary, and violation of a no-contact order. Cruz-Amado argues that the sentencing court erred by miscalculating his offender score and by entering a no-contact order that prohibits him from entering Skagit County. In addition, Cruz-Amado argues that the victim penalty assessment (VPA) should be stricken from the judgment and sentence based on recent statutory amendments. We affirm in part, reverse in part, and remand.

I

On March 22, 2015, Cruz-Amado stabbed his then wife, T.G., outside of her home. Two of their three children were inside the home at the time. Cruz-Amado fled

the scene. T.G. had seven stab wounds to her chest, abdomen, upper shoulders, and arms. At the time of the assault, an active no-contact order was in place protecting T.G. from Cruz-Amado.

Cruz-Amado was charged with assault in the first degree against a family or household member. An arrest warrant was issued on March 26, 2015. But Cruz-Amado fled the jurisdiction, and, despite a nationwide arrest warrant, he was not arrested until April 20, 2022.

The case proceeded to trial by amended information charging Cruz-Amado with assault in the first degree, burglary in the first degree, and assault in violation of a no-contact order, all with domestic violence allegations. A jury found Cruz-Amado guilty of the lesser included crime of assault in the second degree, residential burglary, and violation of a no-contact order. By special verdict, the jury also found that Cruz-Amado and T.G. were members of the same household at the time of the commission of the crime.

At sentencing, the State presented evidence of Cruz-Amado's 2013 conviction of harassment, a class C felony. In that case, the court sentenced him to 40 days confinement with no community custody and ordered him to have no contact with T.G. for five years.

The State argued that the 2013 conviction counted toward Cruz-Amado's offender score because he did not have a five-year crime-free period prior to the commission of this offense. Cruz-Amado argued that the conviction washed out because he was in the community not in confinement between March 22, 2015 until his arrest in April 2022.

-2-

The trial court ruled that the 2013 felony did not wash out and included it in Cruz-Amado's offender score. Cruz-Amado received a standard range sentence of 20 months. The trial court also entered a postconviction domestic violence no-contact order preventing Cruz-Amado from contacting T.G. for 10 years. The no-contact order also prohibits Cruz-Amado from entering Skagit County, where T.G. resides.

Cruz-Amado appeals.

II

Cruz-Amado argues the trial court improperly calculated his offender score because it included a 2013 felony harassment conviction that had washed out. We disagree.

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, expressly requires the State to not consider some felony convictions in an offender score under some circumstances. The "Offender score" statute provides:

> class C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

RCW 9.94A.525(2)(c).

RCW 9.94A.525(2)(c) is split into two separate clauses, a trigger clause "which identifies the beginning of the five-year [washout] period," and a continuity/interruption clause, "which sets forth the substantive requirements an offender must satisfy during the five-year period." State v. Ervin, 169 Wn.2d 815, 821, 239 P.3d 354 (2010).

Statutory interpretation is a question of law reviewed de novo. In re Det. of Williams, 147 Wn.2d 476, 486, 55 P.3d 597 (2002). "The court's paramount duty in statutory interpretation is to give effect to the legislature's intent." In re Pers. Restraint of Nichols, 120 Wn. App. 425, 431, 85 P.3d 955 (2004). The surest indication of legislative intent is the language enacted by the legislature, so if the meaning of a statute is plain on its face, we "'give effect to that plain meaning.'" State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005) (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). "[W]e presume the legislature does not intend absurd results." Ervin, 169 Wn.2d at 823.

The plain language of the statute states, "the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction." RCW 9.94A.525(2)(c) (emphasis added). Here, the parties agree that the triggering event was Cruz-Amado's release for felony harassment in early 2013. Cruz-Amado did not spend five years in the community without committing any crime. From his release in early 2013, to the assault of T.G. on March 22, 2015, at most two years had passed. And that crime subsequently resulted in a conviction.

Cruz-Amado instead asserts that the time period after his assault on T.G., from 2015 to his arrest in April 2022, should be considered the washout period.

Cruz-Amado relies on Ervin, 169 Wn.2d 815, and State v. Schwartz, 6 Wn. App. 2d 151, 429 P.3d 1080 (2018), aff'd, 194 Wn.2d 432, 450 P.3d 141 (2019). In Ervin, the State and defense counsel disagreed on whether the 17 days Ervin spent in custody for a misdemeanor probation violation interrupted the 5-year washout period. 169 Wn.2d at 818. Our Supreme Court held that "time spent in jail pursuant to violation of probation

stemming from a misdemeanor does not interrupt the wash-out period." Ervin, 169 Wn.2d at 826.

In Schwartz, during a 2017 sentencing, Schwartz's criminal history was presented and included a 1997 crime of forgery and a 2001 crime of failure to register as a sex offender. 6 Wn. App. 2d at 153-54. Schwartz argued that both the 1997 and 2001 class C felony convictions washed out because he was crime free between 2006, his last day of confinement for the 2001 crime, and 2013. Schwartz, 6 Wn. App. 2d at 154, 157. The Court of Appeals agreed, explaining, "[a]ny five-year period will do, so long as it follows the date of entry of judgment and the last date of release from confinement for the prior offense." Schwartz, 6 Wn. App. 2d at 158.

We are not persuaded by Cruz-Amado's attempt to extend Ervin and Schwartz to the circumstances here. We have found no case, and Cruz-Amado, cites none, where Ervin or Schwartz was applied to a five-year period where a defendant is actively avoiding arrest. As the State correctly points out, Cruz-Amado's interpretation creates an absurd scenario—a defendant's offender score would go down if he intentionally flees a jurisdiction and avoids arrest for the requisite period. This is an absurd result and a result the legislature did not intend. The trial court did not err.

III

Cruz-Amado argues that a provision of the no-contact order prohibiting him from entering Skagit County was insufficiently tailored to meet the State's objectives.[1] We agree.

---

[1] Cruz-Amado is also prohibited from entering Skagit County during the period of community custody supervision. However, Cruz-Amado only challenges the no-contact order.

The SRA permits trial courts to impose "crime-related prohibitions" such as no-contact orders when sentencing defendants. State v. Armendariz, 160 Wn.2d 106, 120, 156 P.3d 201 (2007). "Crime-related prohibitions" are orders directly related "to the circumstances of the crime." RCW 9.94A.030(10). We review sentencing conditions for an abuse of discretion. State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). Conditions are usually upheld if reasonably crime related. Warren, 165 Wn.2d at 32.

However, more careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right. Warren, 165 Wn.2d at 32. Such conditions must be reasonably necessary to accomplish the essential needs of the State and public order and must be sensitively imposed. Warren, 165 Wn.2d at 32. Under this standard, the court examines whether the sentencing condition (1) furthers a compelling state interest and (2) is reasonably necessary in scope and duration. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 377, 381, 229 P.3d 686 (2010). "The extent to which a sentencing condition affects a constitutional right is a legal question subject to strict scrutiny." Rainey, 168 Wn.2d at 374. Nevertheless, because the determination to impose a crime-related prohibition is "necessarily fact-specific" and is "based upon the sentencing judge's in-person appraisal of the trial and the offender, the appropriate standard of review remains abuse of discretion." Rainey, 168 Wn.2d at 374-75.[2]

---

[2] Cruz-Amado argues that this court applies strict scrutiny in reviewing orders banishing a person from a county and cites State v. Schimelpfenig, 128 Wn. App. 224, 115 P.3d 338 (2005). But Schimelpfenig was criticized by In re Pers. Restraint of Winton, 196 Wn.2d 270, 275, 474 P.3d 532 (2020). Like the no-contact order in this case, Winton considered a "crime-related prohibition." 196 Wn. 2d at 276. And Rainey considered a no-contact order. 168 Wn.2d at 374. Thus, the test applied in Schimelpfenig is not appropriate in this case.

Cruz-Amado argues that there are less restrictive means to serve the State's needs and protect T.G. than prohibiting him from entering Skagit County. In support, Cruz-Amado first cites State v. Alphonse, 147 Wn. App. 891, 897-98, 197 P.3d 1211 (2008), where after Alphonse was convicted of felony and misdemeanor telephone harassment, the trial court ordered Alphonse not to appear in the city limits of Everett unless required for legal or judicial reasons. On appeal, this court vacated the order, holding there were less restrictive means to serve the court's stated purpose including an order restricting contact with the victims or requiring Alphonse to stay a specified distance from them. Alphonse, 147 Wn. App. at 910-11.

Cruz-Amado next cites Schimelpfenig, 128 Wn. App. 224, 225, 115 P.3d 338 (2005), where, as part of his sentence for first degree murder, the trial court ordered Schimelpfenig not to reside in Grays Harbor County or have any contact with members of the victim's family. The appellate court vacated the order, holding that a more narrowly tailored restriction would protect the victim's family from being reminded of their loss. Schimelpfenig, 128 Wn. App. at 230. But the court also noted, "we do not imply that countywide or other types of jurisdictional prohibitions will always be inappropriate." Schimelpfenig, 128 Wn. App. at 230.

In this case, the no-contact order prohibiting Cruz-Amado from entering Skagit County is to protect T.G. Generally, the State has a compelling interest in preventing future harm to the victims of crime. Rainey, 168 Wn.2d at 377. T.G. resides in Skagit County. And Cruz-Amado has shown that he is not deterred by a standard no-contact order as one was in place when he attacked T.G. in 2015.

Cruz-Amado proposes that he be allowed to travel through Skagit County without stopping or that the prohibition apply only as long as T.G. resides in the county. The State agrees that both suggestions could be legally implemented if this case is remanded. Skagit County sits on Interstate-5, the major north-south interstate highway in Washington, the county extends west to the Salish sea and east to the Cascade mountains. Avoiding the county to travel North would take a significant amount of time and, depending on the season, could be impossible. Thus, this provision of the no-contact order is not reasonably necessary in scope.

Given the fact-specific nature of the inquiry, we remand for resentencing, so that the sentencing court may address the parameters of the no-contact order under the "reasonably necessary" standard. Rainey, 168 Wn.2d at 377.

IV

In a motion submitted after his opening brief, Cruz-Amado argues that the VPA should be stricken from the judgment and sentence based on recent statutory amendments. The State did not respond to Cruz-Amado's motion.

The VPA was recently addressed in State v. Ellis, __ Wn. App. __, 530 P.3d 1048, 1057 (2023). There, Division Two of this court observed that:

> ESHB [Engrossed Substitute H.B.] 1169 added a subsection to RCW 7.68.035 that prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). LAWS OF 2023, ch. 449 § 1; RCW 7.68.035(4). The amended statute also requires trial courts to waive any VPA imposed prior to the effective date of the amendment if the offender is indigent, on the offender's motion. LAWS OF 2023, ch. 449 § 1; RCW 7.68.035(5)(b). This amendment will take effect on July 1, 2023. LAWS OF 2023, ch. 449 § 1.

Ellis, 530 P.3d at 1057.  The new provision applies to cases pending direct appeal.

Ellis, 530 P.3d at 1057 (citing State v. Ramirez, 191 Wn.2d. 732, 748-49, 426 P.3d 714 (2018)).  We agree.  Because the court found Cruz-Amado indigent, the VPA should be stricken on remand.

     Affirmed in part, reversed in part, and remanded.

_____
Mann, J.

WE CONCUR:

_____    _____
Birk, J.                             Dwyer, J.