

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE OCT 1 0 2019

CHIEF JUSTICE

This opinion was
filed for record
at 8am on Oct 10 2019

Susan L. Carlson
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | No. 96643-5 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| MATTHEW T. SCHWARTZ, | ) | |
| | ) | Filed ___OCT 1 0 2019___ |
| Respondent. | ) | |
| | ) | |

OWENS, J. — Matthew T. Schwartz pleaded guilty to felony failure to register

as a sex offender. At sentencing, Schwartz and the State disputed whether two of

Schwartz's prior class C felony convictions had "washed out"—that is, whether

Schwartz's prior convictions should not have been included in his offender score—

under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. Specifically,

the parties disagreed as to whether time spent in jail as a sanction for failing to pay

legal financial obligations (LFOs) ordered on a felony conviction resets the five-year

washout period under RCW 9.94A.525(2)(c).

We hold that the legislature did not intend that time spent in jail as a sanction

for failing to pay LFOs ordered on a felony conviction reset the five-year washout period and precluded a prior class C felony conviction from washing out. Reading RCW 9.94A.525(2)(c) as resetting the washout period when a defendant spends time in jail for failing to pay LFOs leads to absurd results and is contrary to the SRA and its legislative history. Accordingly, both Schwartz's 1997 and 2001 convictions wash out under RCW 9.94A.525(2)(c) and should not have been included in his offender score. Thus, we affirm the Court of Appeals.

FACTS

Schwartz was convicted of a felony sex offense and required by law to register as a sex offender. In 2017, a Klickitat County sheriff's deputy learned that Schwartz had moved from his last reported residence nearly three months prior and had failed to provide notice of the address change. The State subsequently charged Schwartz with felony failure to register as a sex offender.

Schwartz pleaded guilty as charged. Prior to sentencing, both the State and Schwartz reported the following criminal history for Schwartz:

| Crime | Violation Date | Sentence Date | Crime Type |
|---|---|---|---|
| Second Degree Assault (with Sexual Motivation) | 09/01/1993 | 07/10/1998 | FA [felony class A] |
| Forgery | 07/02/1997 | 07/22/1997 | FC [felony class C] |
| Failure to Register as a Sex Offender | 05/04/2001 | 09/04/2001 | FC |
| VUCSA [violation of the Uniform Controlled Substances Act] – Possession of Methamphetamine | 03/13/2013 | 11/03/2014 | FC |

2

*See* Clerk's Papers at 28.

Schwartz stipulated that both his 1998 second degree assault conviction and his 2014 possession of methamphetamine conviction counted toward his offender score. Accordingly, Schwartz's 1998 second degree assault conviction counted as three points toward his offender score, and his 2014 possession of methamphetamine conviction counted as one point. RCW 9.94A.525(2)(a), (17), (7).

Schwartz argued, however, that neither his 1997 forgery conviction nor his 2001 failure to register as a sex offender conviction should be included in his offender score. Schwartz asserted that he spent over 5 years in the community without committing any crime that resulted in a conviction between the date of release from confinement for his 2001 failure to register as a sex offender conviction and his 2014 possession of methamphetamine conviction.[1] Schwartz reasoned that because he had spent over 5 years in the community without a conviction, his 1997 and 2001 class C felony convictions washed out under the SRA. Schwartz calculated his offender score as a 4, resulting in a standard range sentence of 12 to 14 months in confinement. RCW 9.94A.510.

The State disagreed with Schwartz's offender score calculation, contending that his 1997 forgery and 2001 failure to register as a sex offender convictions counted as

---

[1] The parties do not provide the dates on which Schwartz was released from confinement for any of his prior convictions.

one point each. RCW 9.94A.525(7), (18). The State noted that the trial court had entered three separate orders between 2014 and 2015 modifying the judgment and sentence for Schwartz's 2001 failure to register as a sex offender conviction and imposing additional jail time as sanctions due to Schwartz's failure to pay LFOs ordered on his 2001 conviction.[2] The State argued that because Schwartz was confined in jail for failing to pay the LFOs ordered on his 2001 conviction, Schwartz had been confined pursuant to a felony conviction. The State further reasoned that due to Schwartz's time in jail pursuant to his 2001 felony conviction, the SRA's washout period was not triggered until his release in 2015. Accordingly, the State asserted that Schwartz had not spent 5 years in the community without a conviction and calculated his offender score as a 6, leading to a standard range sentence of 17 to 22 months. RCW 9.94A.510.

The trial court determined that Schwartz's offender score was a 6 and imposed a sentence of 17 months in confinement. The trial court concluded that the three orders modifying Schwartz's judgment and sentence and imposing sanctions for his failure to pay LFOs "exclude[d] any washout of the forgery and the failing to register

---

[2] In 2014 and 2015, Washington law permitted a court to imprison a defendant as a sanction for failing to pay LFOs ordered on a sentence if the defendant was capable of paying the LFOs and willfully refused to pay *or* if the defendant did not make a sufficient bona fide effort to seek employment or borrow money to pay the LFOs. *State v. Nason*, 168 Wn.2d 936, 945, 233 P.3d 848 (2010); *see* former RCW 9.94A.6333 (2008). In 2018, this law was amended by House Bill 1783 to provide that a court may sanction a defendant for failure to pay LFOs *only* when the failure to pay is willful. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). House Bill 1783 "address[ed] some of the worst facets of the system that prevent offenders from rebuilding their lives after conviction." *Id.*

4

as a sex offender crimes." Transcript of Proceedings at 28. The court reasoned that "the time of any service of any sentence [related to a felony conviction]," *id.*, counted as "confinement . . . pursuant to a felony conviction" under RCW 9.94A.525(2)(c) of the SRA.

Schwartz appealed, and Division Three of the Court of Appeals reversed his sentence and remanded for resentencing within the appropriate standard range. *State v. Schwartz*, 6 Wn. App. 2d 151, 160, 429 P.3d 1080 (2018). The Court of Appeals held that "the language 'the last date of release from confinement . . . pursuant to a felony conviction' in RCW 9.94A.525(2)(c) does not include confinement imposed for a failure to make a payment toward LFOs." *Id.* at 153 (alteration in original). The court reasoned that the legislature did not intend that financial conditions on a criminal sentence be included in an offender score because a condition requiring the payment of LFOs is not directly related to public safety and because the obligation to pay LFOs can continue well beyond the statutory maximum term for the convicted offense. *Id.* The State petitioned this court for review, which we granted. 192 Wn.2d 1023 (2019).

## ISSUE

Does serving jail time as a sanction for failing to pay LFOs ordered as part of a felony conviction constitute "confinement . . . pursuant to a felony conviction" under RCW 9.94A.525(2)(c) such that the statute's washout period would not trigger until the last date of release from such confinement?

ANALYSIS

The State argues that neither Schwartz's 1997 forgery conviction nor his 2001 failure to register as a sex offender conviction wash out under the SRA because Schwartz spent time in jail as a sanction for failing to pay LFOs ordered on a felony conviction. Specifically, the State argues that time spent in jail for failing to pay LFOs qualifies as "confinement . . . pursuant to a felony conviction" under the plain language of RCW 9.94A.525(2)(c) and resets the start of the five-year washout period. We disagree. We hold that the legislature did not intend that time spent in jail as a sanction for failing to pay LFOs ordered on a felony conviction reset the five-year washout period and precluded a prior class C felony conviction from washing out.[3] Accordingly, Schwartz's 1997 and 2001 convictions wash out under RCW 9.94A.525(2)(c) and should not have been included in his offender score.

We review a trial court's offender score calculation de novo. *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003). To properly calculate a defendant's offender score, trial courts must determine a defendant's criminal history based on his or her prior convictions under the statutory formula of RCW 9.94A.525. *State v. Ross*, 152

---

[3] Nothing in this opinion should be read as expressing any view as to whether a prior conviction may wash out when a defendant has spent time in jail as a sanction for violating a condition of his or her sentence. We answer only the narrow question of whether confinement pursuant to a sanction for failing to pay LFOs precludes a prior felony conviction from washing out under the SRA.

6

Wn.2d 220, 229, 95 P.3d 1225 (2004). When a trial court miscalculates a defendant's offender score, we remand the case to the trial court for resentencing. *Id.*

To determine whether the trial court properly calculated Schwartz's offender score by counting his 1997 forgery and 2001 failure to register as a sex offender convictions toward his score, we must interpret RCW 9.94A.525(2)(c). We review questions of statutory interpretation de novo. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). The primary goal of statutory interpretation is to discern and implement the legislature's intent in enacting the statute. *Id.* In interpreting a statute, we first look to the plain meaning of the statute. *State v. Roggenkamp*, 153 Wn.2d 614, 621, 106 P.3d 196 (2005). To determine a statute's plain meaning, we look to the text of the statute itself, as well as the context of the statute, related statutory provisions, and the statutory scheme as a whole. *Ervin*, 169 Wn.2d at 820.

If the meaning of the statute is plain on its face, we must give effect to that plain meaning. *Id.* If, however, the statute is susceptible to more than one reasonable interpretation, the statute is ambiguous. *Roggenkamp*, 153 Wn.2d at 621. "Legislative history, principles of statutory construction, and relevant case law may provide guidance in construing the meaning of an ambiguous statute." *Id.*

RCW 9.94A.525(2)(c) directs whether class C felony convictions are to be included in a defendant's offender score. "[O]ffenses which 'shall not be included in the offender score' . . . are said to have 'washed out.'" *State v. Keller*, 143 Wn.2d 267, 284, 19 P.3d 1030 (2001) (quoting former RCW 9.94A.360(2) (1996), *recodified*

7

*as* RCW 9.94A.525(2)(c)). RCW 9.94A.525(2)(c) provides:

> [C]lass C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

The statute is split into two separate clauses: a trigger clause, "which identifies the beginning of the five-year [washout] period," and a continuity/interruption clause, "which sets forth the substantive requirements an offender must satisfy during the five-year period." *Ervin*, 169 Wn.2d at 821. Accordingly, the plain language of RCW 9.94A.525(2)(c) provides that the washout period on certain prior convictions will trigger when five years have elapsed between the last date of release from confinement pursuant to a felony conviction and a subsequent conviction.

At issue in this case is the meaning of the phrase "the last date of release from confinement . . . pursuant to a felony conviction." RCW 9.94A.525(2)(c). The State relies on *State v. Mehrabian*, a decision from Division One of the Court of Appeals, in arguing that time spent in jail for the failure to pay LFOs is confinement pursuant to a felony conviction under the plain language of RCW 9.94A.525(2)(c). 175 Wn. App. 678, 716, 308 P.3d 660 (2013). In *Mehrabian*, the Court of Appeals reasoned that confinement results from both an original conviction, which includes any ordered LFOs, and the failure to pay LFOs ordered on that conviction. *Id.* at 715. The court also noted that the term "'pursuant to'" is defined as "'in the course of carrying out'"

8

and "'according to.'" *Id.* at 716 (internal quotation marks omitted) (quoting *State v. Blair*, 57 Wn. App. 512, 515-16, 789 P.2d 104 (1990)). As a result, the court held that under the plain language of RCW 9.94A.525(2)(c), confinement pursuant to a felony conviction "includes confinement due to [the failure to pay LFOs] since this confinement results 'in the course of carrying out and according to a felony conviction.'" *Id.* (internal quotation marks omitted) (quoting *Blair*, 57 Wn. App. at 515-16).

The degree to which the legislature intended the phrase "the last date of release from confinement . . . pursuant to a felony conviction" to extend is unclear from the face of the statute. Although the State's broad interpretation of RCW 9.94A.525(2)(c) is reasonable, it is also reasonable to interpret the statute as referring only to incarceration ordered on a felony conviction and not jail time served for failing to pay LFOs after a defendant has been released from that term of incarceration. The SRA consistently uses the term "release from confinement" to refer to release from incarceration for the sentenced felony conviction. RCW 9.94A.728(1) ("No person serving a sentence imposed pursuant to [the SRA] . . . shall leave the confines of the correctional facility or be released prior to the expiration of the sentence . . . ."), .760(5) ("All other [LFOs] for an offense committed prior to July 1, 2000, may be enforced at any time during the ten-year period following the offender's release from total confinement."). Accordingly, RCW 9.94A.525(2)(c) is subject to more than one reasonable interpretation and is ambiguous.

Because RCW 9.94A.525(2)(c) is ambiguous, we may engage in statutory construction to ascertain its meaning. We do not attempt to ascertain the statute's meaning for all purposes because this case asks only the narrow question of how it applies to confinement for failure to pay LFOs. Therefore, we may assume without deciding that RCW 9.94A.525(2)(c) does reset the washout period when a person is jailed as a sanction for violating sentence conditions generally. Nevertheless, based on several factors unique to LFOs, we hold that such a reading is not what the legislature intended when a person is jailed for failure to pay.

In effect, the State argues that the five-year washout period can continue to reset until a defendant has paid all LFOs ordered on a felony conviction. However, the State's interpretation of RCW 9.94A.525(2)(c) is contrary to the meaning of the different terms used by the legislature. A "fundamental rule of statutory construction is that the legislature is deemed to intend a different meaning when it uses different terms." *Roggenkamp*, 153 Wn.2d at 625.

The SRA originally provided that "[c]lass C prior felony convictions . . . are not included [in an offender score] if the offender has spent five years in the community and has not been convicted of any felonies." LAWS OF 1983, ch. 115, § 7 (*recodified as* RCW 9.94A.525(2)(c)). The legislature added the trigger clause at issue in this case pursuant to a recommendation by the Washington Sentencing Guidelines Commission (Commission). Amend. 1247-S WASH. SENTENCING GUIDELINES COMM'N TO SUBSTITUTE H.B. 1247, at 3, 48th Leg., Reg. Sess. (Wash.

10

1984). Before making its final recommendation to the legislature, the Commission considered, yet rejected, amending the washout period to state that "the washout period starts from the date of *discharge from confinement* and ends at the date of the new offense," so that the washout statute would be more consistent with the SRA's vacation statute. WASH. SENTENCING GUIDELINES COMM'N, Meeting Minutes (Dec. 9, 1983) at 10 (emphasis added). The SRA permits the vacation of a defendant's record of conviction for a class C felony when "five years have passed since the date the [defendant] was discharged" from confinement for that felony. Former RCW 9.94A.640(2)(f) (2012). A defendant can be discharged from confinement when the defendant "has completed all requirements of the sentence, including any and all [LFOs]." RCW 9.94A.637(1)(a).

Here, the legislature chose to use the term "release" in the washout statute and the term "discharge" in the vacation statute. Because the legislature chose to use different terms, we recognize that the legislature intended a different meaning by each term. By choosing the term "release from confinement," instead of "discharge from confinement," both the Commission and the legislature intended that defendants not be required to pay all LFOs ordered on a felony conviction in order to be "release[d] from confinement . . . pursuant to a felony." Relatedly, the legislature did not intend that a defendant pay all LFOs before the five-year washout period could trigger and allow a prior felony conviction to wash out. Accordingly, the legislature's use of the term "release from confinement" in RCW 9.94A.525(2)(c) indicates that the

11

legislature did not intend that the five-year washout period continue to reset until a defendant paid all LFOs ordered on a felony conviction.

It is also absurd to read RCW 9.94A.525(2)(c) as resetting the five-year washout period any time a defendant has failed to pay his or her LFOs. "[W]e presume the legislature does not intend absurd results and, where possible, interpret ambiguous language to avoid such absurdity." *Ervin*, 169 Wn.2d at 823-24.

Class C felony convictions are intended to "eventually 'wash out' and be eliminated from the Offender Score." WASH. SENTENCING GUIDELINES COMM'N, ADULT FELONY SENTENCING MANUAL 1984, at II-34. However, LFOs are "[o]ne of the most serious long-term consequences of a conviction." Travis Stearns, *Intimately Related to the Criminal Process: Examining the Consequences of a Conviction After Padilla v. Kentucky and* State v. Sandoval, 9 SEATTLE J. FOR SOC. JUST. 855, 874 (2011). Many defendants cannot afford the LFOs ordered as part of their convictions and either pay only a small sum each month or do not pay their LFOs at all. *State v. Blazina*, 182 Wn.2d 827, 836, 344 P.3d 680 (2015). As a result, a defendant may owe LFOs for decades after he or she has been released from incarceration—sometimes even long after the statutory maximum sentence for the convicted offense has expired. *Cf. id.* at 836-37; *see* KATHERINE A. BECKETT ET AL., WASH. ST. MINORITY & JUST. COMM'N, THE ASSESSMENT AND CONSEQUENCES OF LEGAL FINANCIAL OBLIGATIONS IN WASHINGTON STATE 22 (2008) ("[E]ven those who make regular monthly payments of $25 toward an average [LFO] will still possess legal debt after

12

30 years."). Given that class C felony convictions are intended to eventually wash out and a defendant's LFOs may never be satisfied, it is absurd to read RCW 9.94A.525(2)(c) as precluding a conviction from washing out when a defendant spends time in jail for failing to pay LFOs ordered on that conviction. If convictions could not wash out under the SRA unless a defendant has paid all LFOs, many felony convictions would never wash out. We presume that the legislature did not intend such a result.

Even further, it is absurd to read RCW 9.94A.525(2)(c) as precluding a conviction from washing out due to a defendant's failure to pay LFOs because such a reading would permit varying treatment of similarly situated defendants. For example, a defendant who was conviction-free for five years and who paid all LFOs owed in that time frame would face a lower standard sentence range because any eligible prior class C felony convictions would wash out and not be counted toward his or her offender score. However, a defendant with the exact same criminal history would be subject to a greater standard sentence range simply because he or she spent time in jail for failing to pay LFOs. *See In re Pers. Restraint of LaChapelle*, 153 Wn.2d 1, 6, 100 P.3d 805 (2004) ("The difference of a single point may add or subtract three years to an offender's sentence."). Such an outcome is contrary to the SRA, as the SRA applies "equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant." RCW 9.94A.340. Precluding a conviction from washing

13

out due to a defendant's failure to pay LFOs permits discrimination based on a defendant's ability to pay court ordered fees rather than on his or her criminal history. We presume that the legislature did not intend that defendants who have failed to pay LFOs ordered on a felony conviction spend even more time in confinement on a subsequent felony conviction than other similarly situated defendants.

The dissent contends that such unequal treatment is not an issue in this case because a person can be jailed only for willful nonpayment, not inability to pay. However, our own cases show that people who are unable to pay are not consistently protected from serving jail time. For instance, in one case we were called on to strike down an "auto-jail provision," which was preprinted on LFO agreement forms and required a defendant to report to jail for failing to make an LFO payment "without a contemporaneous inquiry into his ability to pay." *State v. Nason*, 168 Wn.2d 936, 946, 233 P.3d 848 (2010). More recently, we were required to reverse a district court for "disregard[ing] whether [the defendant] could currently meet her own basic needs when evaluating her ability to pay." *City of Richland v. Wakefield*, 186 Wn.2d 596, 606, 380 P.3d 459 (2016). Thus, although we cannot presume that any particular defendant was unconstitutionally jailed for inability to pay, we know that many have been. This reality, in addition to the other unique features of LFOs described above, leads us to conclude that jail time for failure to pay LFOs is not "confinement . . . pursuant to a felony conviction" for purposes of RCW 9.94A.525(2)(c).

Notwithstanding its statutory interpretation argument, the State argues that

14

neither Schwartz's 1997 forgery conviction nor his 2001 failure to register as a sex offender conviction should wash out under RCW 9.94A.525(2)(c) because Schwartz's 2014 conviction for possession of methamphetamine reset the five-year washout period. The State appears to misunderstand the SRA's washout statute. RCW 9.94A.525(2)(c) requires only that a defendant spend five consecutive crime-free years in the community. *State v. Hall*, 45 Wn. App. 766, 769, 728 P.2d 616 (1986). The washout period is not required to immediately follow the prior conviction. *See id.* The parties do not appear to dispute that Schwartz was crime-free in the community for at least six and a half years. *Schwartz*, 6 Wn. App. 2d at 157. Because Schwartz spent over five consecutive years in the community without being convicted of a crime, his later 2014 conviction did not reset the five-year washout period under RCW 9.94A.525(2)(c).

We hold that the legislature did not intend that time spent in jail as a sanction for failing to pay LFOs ordered on a felony conviction reset the five-year washout period and precluded a prior class C felony conviction from washing out under RCW 9.94A.525(2)(c). Stated another way, jail time for failing to pay LFOs does not constitute "confinement . . . pursuant to a felony conviction," and a prior class C felony conviction should not be included in a defendant's offender score when he or she has been sanctioned for failing to pay LFOs but has nonetheless been in the community for five years without committing an offense resulting in a conviction. Because Schwartz spent over five years in the community without committing any

15

crime that resulted in a conviction between the date of release from confinement for his 2001 failure to register as a sex offender conviction and his 2014 possession of methamphetamine conviction, both his 1997 forgery conviction and his 2001 failure to register as a sex offender conviction wash out under RCW 9.94A.525(2)(c) and should not have been included in his offender score.

## CONCLUSION

We hold that the legislature did not intend that time spent in jail as a sanction for failing to pay LFOs ordered on a felony conviction reset the five-year washout period and preclude a prior class C felony conviction from washing out. Reading RCW 9.94A.525(2)(c) as precluding a conviction from washing out when a defendant spends time in jail for failing to pay LFOs ordered on that conviction leads to absurd results and is contrary to the SRA and its legislative history. Accordingly, both Schwartz's 1997 and 2001 convictions wash out under RCW 9.94A.525(2)(c) and should not have been included in his offender score. We affirm the Court of Appeals.

16

Owens, J

WE CONCUR:

Fairhurst, C.J.

Wiggins, J.

Madsen, J.

Yu, J

No. 96643-5

GONZÁLEZ, J. (dissenting)—Dissatisfied with what it believed to be

inconsistent sentences handed down by judges under our old indeterminate sentencing

system, our legislature replaced that system with a determinate sentencing system.

Under this determinate system, sentences are based on the seriousness of the offense

and the offender score of the defendant. The offender score is based on the offender's

prior criminal history. Recognizing that people do reform themselves, some of that

criminal history can "wash out" of a score in time, but only if the person meets certain

criteria. Among those criteria is not willfully failing to pay legal financial obligations

(LFOs). Matthew T. Schwartz willfully failed to pay his LFOs and, less than five

years later, pleaded guilty to failure to register as a sex offender. I agree with the

majority that the failure to pay LFOs because of inability to do so should not keep a

prior offense from washing out. *See United States v. Parks*, 89 F.3d 570, 573 (9th Cir.

1996) (imposing a longer sentence, "based solely on nonpayment, would be

'fundamentally unfair'" (quoting *Bearden v. Georgia*, 461 U.S. 660, 668, 103 S. Ct.

2064, 76 L. Ed. 2d 221 (1983))). But the record contains the court orders confining Schwartz for willfully failing to pay his LFOs. He is not entitled to the relief the majority gives him today. I respectfully dissent.

I recognize that there was confusion at oral argument about whether Schwartz was indigent at the time he was jailed for willful failure to pay his LFOs.[1] But it would have been serious constitutional error to jail an indigent person for failure to pay LFOs. The record leaves no doubt that Schwartz was jailed because his "failure to make timely payment was willful or intentional." *See, e.g.*, Clerk's Papers at 33. We cannot instead assume he was jailed for being unable to pay his LFOs. *Cf. State v. Yancey*, 193 Wn.2d 26, 34, 434 P.3d 518 (2019) (remanding for full resentencing because the trial court's reasoning was unclear from the record).

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, is clear. A prior felony conviction does not count toward a defendant's offender score, i.e., will "wash out," if five years have passed "since the last date of release from confinement . . . pursuant to [that] felony conviction." RCW 9.94A.525(2)(c). Plainly, the legislature intended for "confinement . . . pursuant to a felony conviction" to include confinement for subsequent violations of conditions in the judgment and sentence. RCW 9.94A.525(2)(c). LFOs are conditions of a sentence, and a willful failure to

---

[1] Schwartz's counsel said that she was not responsible for preserving the record and that she "assume[d] [Schwartz] was" indigent when he was found to willfully fail to pay his LFOs. *See* Wash. Supreme Court oral argument, *State v. Schwartz*, No. 96643-5 (June 25, 2019), at 23 min., 22 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

2

comply with these conditions may result in modification of the judgment and sentence and further confinement. *E.g.*, RCW 9.94A.760(10), .6333. In *State v. Mehrabian*, the Court of Appeals held that under the plain language of RCW 9.94A.525(2)(c), confinement pursuant to a felony conviction "'includes confinement due to [the failure to pay LFOs] since this confinement results in the course of carrying out and according to a felony conviction.'" 175 Wn. App. 678, 716, 308 P.3d 660 (2013) (internal quotation marks omitted) (quoting *State v. Blair*, 57 Wn. App. 512, 515-16, 789 P.2d 104 (1990)). I agree.

I would reverse because the plain language of RCW 9.94A.525(2)(c) does not make a distinction between financial and nonfinancial conditions. As a policy matter, I agree with the majority that the long-term burden imposed by LFOs should not haunt people in perpetuity. *See* majority at 11-12. But, assuming the majority is correct that felony convictions are intended to eventually wash out, holding that they do not wash out when a defendant *willfully* failed to pay them does not undermine that intent. A failure to pay is willful only if the defendant has the current ability to pay but refuses to do so. RCW 10.01.180(3)(a). A prior felony conviction will wash out if a defendant is not confined for willfully failing to pay the LFOs on that prior conviction.

Before imposing LFOs, courts must consider "incarceration, job status, debts, or other indicators of ability to pay." *State v. Malone*, 193 Wn. App. 762, 766, 376 P.3d 443 (2016); *see also State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015).

3

And we have cautioned that confinement for willfully failing to pay LFOs should occur only if "'no reasonable or effective alternatives are available.'" *Smith v. Whatcom County Dist. Court*, 147 Wn.2d 98, 113, 52 P.3d 485 (2002) (internal quotation marks omitted) (quoting *In re Pers. Restraint of King*, 110 Wn.2d 793, 802, 756 P.2d 1303 (1988)); *see also Bearden*, 461 U.S. at 672.[2]

The majority's decision to treat RCW 9.94A.525(2)(c) as ambiguous and give it a narrow construction is a dramatic change in the law with additional consequences. The majority holds RCW 9.94A.525(2)(c) is ambiguous because "it is also reasonable to interpret the statute as referring only to incarceration ordered on a felony conviction." Majority at 9. While confinement conceivably refers only to incarceration ordered on the felony conviction, this narrow construction of RCW 9.94A.525(2)(c) is not reasonable. *See Five Corners Family Farmers v. State*, 173 Wn.2d 296, 305, 268 P.3d 892 (2011) ("The fact that two or more interpretations are conceivable does not render a statute ambiguous." (citing *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005))).

---

[2] The majority finds, "Precluding a conviction from washing out due to a defendant's failure to pay LFOs permits discrimination based on a defendant's ability to pay court ordered fees rather than on his or her criminal history." Majority at 13. A prior conviction would be precluded from washing out only if a defendant had the ability to pay and was jailed for willfully failing to do so. If I understand the majority correctly, the same reasoning would preclude anyone from being jailed for willful failure to pay LFOs because "the SRA applies 'equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant.'" *Id.* (quoting RCW 9.94A.340). The SRA specifically provides for LFOs; it is not a discriminatory application of the SRA to jail someone for willful refusal to pay their LFOs.

Even though the majority cautions that it is not expressing a view on confinement for violation of other conditions of a sentence, it necessarily does so by narrowly construing RCW 9.94A.525(2)(c). While the policy surrounding LFOs factors into the majority's interpretation of the legislature's intent, nothing about the difference between financial and nonfinancial conditions created the ambiguity necessitating the statute's narrow construction. By limiting "confinement . . . pursuant to a felony conviction" in RCW 9.94A.525(2)(c) to specifically mean incarceration ordered on a felony conviction, confinement for violating any condition will not interrupt the washout period. *Contra Blair*, 57 Wn. App. at 515-16; *State v. Perencevic*, 54 Wn. App. 585, 589, 774 P.2d 558 (1989). Such a result is an unfortunate consequence of the majority's interpretation and is not what the legislature intended.

Under RCW 9.94A.525(2)(c), defendants who do not have the ability to pay LFOs get the benefit of the washout statute. Defendants who willfully fail to pay their LFOs within five years of the current crime do not get the benefit of the washout statute. The majority not only gives defendants who had willfully failed to pay their LFOs the benefit of the washout statute but also potentially gives anyone who is confined for violating any other condition of their sentence the same benefit. I respectfully dissent.

5

González, J.