**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILED
MARCH 12, 2026
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40682-2-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| DANIEL ELIJAH LYBBERT, | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Daniel Lybbert was found not guilty by reason of insanity in 2009 and committed to the Department of Social and Health Services (DSHS). In 2024, he petitioned the court for unconditional release, submitting various reports on his improved mental health and lack of dangerousness. The court read RCW 10.77.595(3)[1] to require it to hold a hearing within 45 days. The State moved to strike, arguing that it was impossible to complete the necessary assessments, evaluations, and reports within that short amount of time. The court disagreed, and following a hearing, granted Mr. Lybbert's petition. The State appealed, arguing that the court misapplied the statute.

---

[1] During the pendency of this case, ch. 10.77 RCW was recodified. Former RCW 10.77.200 (2023) was recodified as RCW 10.77.595. The substantive language did not change. For purposes of future clarity, we refer to the recodified statute.

No. 40682-2-III
*State v. Lybbert*

We hold that RCW 10.77.595(3), which states that "[t]he court, upon receipt of the petition for release, shall within 45 days order a hearing," requires the court to set a hearing within 45 days, not simply enter a scheduling order within that time limit. Here, the trial court set a timely hearing and the State failed to show good cause for its untimely motion for a continuance. Finding no error, we affirm.

FACTS

In 2009, Mr. Lybbert was found not guilty by reason of insanity (NGRI) of first degree murder. He was suffering from schizophrenia and methamphetamine abuse. He was committed to DSHS and admitted to Eastern State Hospital (ESH) for medical and psychiatric treatment.

Ten years later, in 2019, Mr. Lybbert was placed on conditional release in Spokane. Over the next five years he had no incidents or violations of his release. On May 15, 2024, Mr. Lybbert petitioned the superior court for final discharge pursuant to former RCW 10.77.200(3)-(5) (2023). He asserted that his mental health issues have been in remission for several years and that he had not had any criminal charges for 18 years. He also noted that he received a bachelor of arts degree and helped coordinate an Alcoholics Anonymous group since his conditional release. He argues that these facts, among others, show that he is no longer dangerous and thus he merits unconditional release.

2

No. 40682-2-III
*State v. Lybbert*

A medical evaluation was included with his petition that included the following diagnoses:

> Schizophrenia, in sustained remission with medication management
> Stimulant Use Disorder, amphetamine type, in sustained remission
> Alcohol Use Disorder, in sustained remission
> Cannabis Use Disorder, in sustained remission

Clerk's Papers (CP) at 25 (italics omitted). The evaluation also concluded that "[h]is base rate risk of violent behavior in the future is considered very low." CP at 26. It noted that "[t]here is no record of violence or aggression since his arrest." CP at 26. "There is no indication in the documentation he has expressed violent ideation, he has not exhibited symptoms of any diagnosed mental health disorders, nor has he exhibited emotional, cognitive, or behavioral instability in many years. He has shown careful adherence to all treatment recommendations and requirements for supervision." CP at 27. This was despite going through "a very contentious break-up and the death of his father." CP at 27. The report concluded that "[t]here is no compelling data to suggest that he requires further monitoring by the State. . . . Therefore, it is my opinion [that] he is currently appropriate for an unconditional release." CP at 30.

On June 7, 2024, Mr. Lybbert filed a notice of hearing for his unconditional release petition with the hearing set for July 3, 2024. The prosecuting attorney objected and moved to strike the hearing date arguing that ESH could not complete its review process by the hearing date. The State described its petition evaluation process as follows:

3

No. 40682-2-III
*State v. Lybbert*

> When a petition is received, the treatment team reviews the request and then presents to the facility's Risk Review Board (RRB). Following RRB, the outcome of that review along with documentation reviewed by the board is sent to the Public Safety Review Panel (PSRP; parties will be contacted and can request access to that packet of documentation). Following the 30 days allotted timeframe for PSRP review, <u>the DSHS Secretary's Designee will review the request and the official recommendation will be sent to court</u>.

CP at 59-60 (boldface and italics omitted). The State explained that ESH's review process required Mr. Lybbert to undergo a new assessment, which would be completed within 6 months, before being scheduled for RRB review. Mr. Lybbert argued that the court was required by statute to hold a hearing for his unconditional release within 45 days of the filing of his petition. He described the State's procedures as "superfluous" and "drawn-out." CP at 45. He also argued that nothing in the statute requires the State to conduct such intricate release procedures.

At the June 27, 2024 hearing, the court stated, "I have nothing here from the secretary, nothing at all in my record that indicates why they need six months to develop a recommendation. And it's just a recommendation." Rep. of Proc. (RP) at 20. The court granted a short continuance due to the State's unavailability but expressed its frustration that "this unavailability was not provided to [Mr. Lybbert's counsel] or to the Court." RP at 27.

Mr. Lybbert then requested the hearing be set July 10, 2024. At the July 10 hearing, the court stated that "the statute does state a hearing shall be set within 45 days; the court does not believe that means you can set a hearing within 45 days for 6 months

4

No. 40682-2-III
*State v. Lybbert*

out, that is not reasonable." CP at 75. It also stated, "I don't think you can read that as: Oh, within 45 days, we order a hearing and then the hearing's ordered in six months. I think that's disingenuous of the statute. The idea here is that it doesn't linger." RP at 48.

On July 18, 2024, the State submitted a declaration describing its release procedures in more detail. CP 78. The State described a process that includes multiple levels of review to ensure that the DSHS recommendation is clinically and legally sound. The State begins by conducting a forensic risk assessment (FRA) that informs all levels of review. "If a new or updated FRA is needed because one has not been completed or the last one is not recent enough, [DSHS]'s review process begins upon completion of the FRA." CP at 80. "[T]he standard practice and goal is for the FRA to be completed within six (6) months of receipt of the application or petition for unconditional release, if there has not been an FRA conducted in the past year." CP at 80. Then the patient's treatment team reviews the FRA. Next, the RRB reviews the treatment team's recommendation. The PSRP then reviews the petition, the FRA, the treatment team's assessment, and the RRB's recommendations. Finally, the DSHS "Secretary's Designee" reviews the results of the previous steps and then makes its recommendation to the court.

Mr. Lybbert submitted his own declaration by Dr. Wendi Wachsmuth. She stated that she conducted a FRA on Mr. Lybbert, which included reviewing his medical records from ESH, the court file, and Mr. Lybbert's current medication and mental health provider. Dr. Wachsumth further stated that "[a]s the clinical psychologists working for

5

No. 40682-2-III
*State v. Lybbert*

[the State] would have access to all of a defendant's medical records . . . and could quickly and easily access a defendant's treatment records from the community, there are no barriers that would cause a 6 month delay for . . . completing a forensic risk assessment." CP at 90. "The delay appears to be a function of the [DSHS]'s inclusion of two additional reviews by the Risk Review Board and the Public Safety Review Panel." CP at 90.

Cynthia Kelly, an NGRI specialist for the Washington State Behavioral Health Administration, stated that an FRA is not conducted on patients living in the community "unless they make a request for unconditional release." CP at 110. She repeated that "the FRA team's goal for updated FRAs when a patient is living in the community and requests an unconditional release is to get the FRA completed within six months. That's their goal because they fit it in amongst the other FRAs that need to happen." CP at 111. When asked about the amount of time it would take the State to agree to a full discharge, Dr. Kelly said, "it's within six months at the earliest, you know, possible time. . . . So I wouldn't say that the [DSHS] won't review for at least six months. It's, you know—we try to get the FRA done within six months and then complete the review process as soon as possible." CP at 116.

On August 28, 2024, the court entered findings of fact and conclusions of law, granting Mr. Lybbert's petition for unconditional release. The findings of fact include:

> E. Due to the unavailability of the Grant County Prosecuting Attorney's Office for an earlier date, a trial/hearing was set for July 10, 2024—

6

No. 40682-2-III
*State v. Lybbert*

which was fifty-six (56) days after the Petition for Unconditional Release was filed.

F.   A trial was held on July 10, 2024, on Mr. Lybbert's Petition for Unconditional Release.

. . . .

J.   On July 18, 2024—after the trial had occurred—Dr. Cynthia Kelly, NGRI Specialist for Eastern State Hospital, submitted an 8-page declaration detailing the Department's internal review processes that include a Risk Review Board (RRB), the Public Safety Review Panel, and an updated Risk Assessment.

K.   Dr. Kelly's declaration stated that an updated Risk Assessment by the Department could take up to six (6) months based upon the Department's standard practice.

L.   On July 30, 2024, the State moved to continue a court decision on the trial.  The basis to continue the trial was that the State wanted the Court to first receive a recommendation from the Risk Review Board (RRB), the Public Safety Review Panel (PSRP), and a recommendation from the Secretary.

. . . .

N.   Since March of 2019, Mr. Lybbert has had no violations of the terms of his conditions of release.

O.   Also, since March of 2019, Mr. Lybbert has been actively participating in mental health therapy, and in substance abuse treatment and prevention.

. . . .

Q.   Mr. Lybbert's Schizophrenia is in remission and has been for ten (10) years—since 2014.

R.   Mr. Lybbert's Stimulant Use Disorder is in remission and has been for fifteen (15) years.

. . . .

U.   Based upon Dr. Wachsmuth's risk assessment, Mr. Lybbert's risk factor for violence is very low.

V.   Mr. Lybbert's employment history places him in a low category for violence.

W.   Dr. Wachsmuth's risk assessment concluded that Mr. Lybbert's Risk Management steps and skills have alleviated the risk of future problems with treatment, stress and coping, and behaviors requiring supervision.

7

No. 40682-2-III
*State v. Lybbert*

    X.  Mr. Lybbert has strong family support, and intends to move to Utah to live nearby and receive support from his mother and other family members.

    Y.  There is no compelling data to suggest further monitoring of Mr. Lybbert is required by the State.

    Z.  Mr. Lybbert has prove[d] by a preponderance of the evidence that he no longer presents, as a result of a mental disease or defect, a substantial danger to other persons, or a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other institutions or persons.

CP at 163-65.  The court held:

    B.  RCW 10.77.200(3) requires that a court, upon receipt of a petition for unconditional release, set a hearing within 45 days.

    C.  RCW 10.77.200(3) states that a continuance of the hearing date shall only be allowed for good cause shown.

. . . .

    I.  RCW [10.]77.200(3) requires that Mr. Lybbert prove by a preponderance of the evidence that he no longer presents, as a result of a mental disease or defect, a substantial danger to other persons, or a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.

    J.  Mr. Lybbert has prove[d] by a preponderance of the evidence that his mental disease is in remission, and that he is not a substantial danger to other persons, nor is there a substantial likelihood that he will commit criminal acts and jeopardize[e] public safety or security.

. . . .

    M.  Pursuant to *State v. Klein*, 156 Wn.2d 102, 114, 124 P.3d 644 (2005), an insanity acquittee petitioning for full release must be discharged if it is demonstrated that he or she no longer suffers from a mental disease or defect, not withstanding any potential danger to the community.

    N.  The Court therefore grants Mr. Lybbert's petition for unconditional release.

CP at 166-67.  The State appealed.

8

No. 40682-2-III
*State v. Lybbert*

ANALYSIS

While the State assigns error to the trial court's decision to hold a hearing without "waiting for statutorily required reports and recommendations from DSHS," its primary contention throughout its briefing is that the trial court erred by concluding that RCW 10.77.595(3) required the court to set a hearing date within 45 days of the petition being filed. As refined, the issue is one of statutory interpretation that we review de novo. *State v. Haney*, 125 Wn. App. 118, 123, 104 P.3d 36 (2005).

Within RCW 10.77.595, the legislature has established several methods for initiating the review of a committed individual's conditional or full release. One such method allows a committed person to apply for release with the secretary of DSHS who then considers various assessments, reports, and evaluations before making a recommendation. RCW 10.77.595(1), .139(3). If the secretary approves the application for release, it then authorizes the committed person to petition the court for release. RCW 10.77.595(1). A second method is provided by subsection (2), and allows the secretary, on its own initiative, to petition the court for release. *Id*.

A third method is provided by RCW 10.77.595(5). This subsection clarifies that "[n]othing contained in [ch. 10.77 RCW] shall prohibit the patient from petitioning the court for release or conditional release from the institution in which he or she is committed." *Id*. at § (5) This allows a committed person to petition the court directly, without first seeking the secretary's approval. The committed person must serve the

9

No. 40682-2-III
*State v. Lybbert*

petition on the court, prosecuting attorney, and secretary. *Id*. Upon receipt of the petition, "the secretary shall develop a recommendation as provided in subsection (1) of this section and provide the secretary's recommendation to all parties and the court." *Id*.

Subsection (3) of RCW 10.77.595 sets forth certain procedures. In particular, "[t]he court, upon receipt of the petition for release, shall within 45 days order a hearing. Continuance of the hearing date shall only be allowed for good cause shown." *Id*. at § (3). The subsection also provides that the burden of proof at the hearing is upon the petitioner. *Id.*

We turn now to the arguments raised by the State. As a preliminary matter, we address the argument raised by amicus attorney general that the procedures in RCW 10.77.595(3) do not even apply when a direct petition is filed by a committed person under RCW 10.77.595(5). For several reasons, we decline to address this issue. First, it was not raised below. RAP 2.5(a). Second, it is raised only by amicus. *See State v. Taylor*, 150 Wn.2d 599, 603 n.2, 80 P.3d 605 (2003) (generally, court does not address issues raised only by amicus). And third, as the attorney general acknowledges, several courts have already concluded that the statutory procedures apply with a committed person files a direct petition under RCW 10.77.595(3). *See State v. Beaver*, 184 Wn. App. 235, 248 n.44, 336 P.3d 654 (2014), *aff'd*, 184 Wn.2d 321, 358 P.3d 385 (2015) (citing *Haney*, 125 Wn. App. at 123-2436 (2005); *State v. Kolocotronis*, 34 Wn. App. 613, 620-21, 663 P.2d 1360 (1983).

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 40682-2-III
*State v. Lybbert*

The central issue on appeal is whether the statutory directive that courts "shall within 45 days order a hearing" requires that the hearing itself be conducted within 45 days, or merely that it be scheduled within that period. Our primary goal when interpreting a statute is to discern and give effect to the legislature's intent. *State v. Schwartz*, 194 Wn.2d 432, 439, 450 P.3d 141 (2019). To determine legislative intent, we look at the plain language of the statute, consider the text of the provision, the context of the statute, any related statutory provisions, and the statutory scheme as a whole. *Id.* If the statute is unambiguous, and its meaning is clear from the language, our inquiry ends. *Id.* "If, however, the statute is susceptible to more than one reasonable interpretation, the statute is ambiguous." *Id.*

Here, the phrase "order a hearing," when considered in context is not ambiguous. The sentence immediately following this phrase provides that "[c]ontinuance of the hearing date shall only be allowed for good cause shown." RCW 10.77.595(3). The phrase "continuance of the hearing date" suggests that a specific hearing date has already been set within the 45-day period, and that date represents when the hearing must commence. The good cause exception would allow the actual commencement to be delayed beyond the 45 days, but absent good cause, the hearing must begin within that timeframe. This reading gives independent meaning to both the 45-day requirement and the good cause continuance provision—the court must order (direct) that a hearing commence within 45 days but may continue that hearing date for good cause.

11

No. 40682-2-III
*State v. Lybbert*

In addition, as the trial court pointed out, it is unreasonable to presume that the legislature intended to impose no time constraints on setting the initial hearing while simultaneously requiring a showing of good cause for any continuance. Indeed, if we were to interpret the phrase "order a hearing" as only requiring the court to issue a scheduling order within 45 days, the court could set the initial hearing so far out that no continuance would be needed, making the good cause requirement superfluous. On the other hand, reading the phrase to require the court to conduct a hearing within 45 days gives meaning to the continuance requirement for good cause: a hearing can be set beyond the 45 days but only for good cause.

The State contends that even in context the phrase "order a hearing" is ambiguous. Even if we were to agree, such an argument does not help the State. One of the canons we employ when interpreting an ambiguous statute is the canon of constitutional avoidance. Under this canon, "if, among alternative constructions, one or more would involve serious constitutional difficulties, the court will reject those interpretations in favor of a construction that will sustain the constitutionality of the statute." *State v. Scherner*, 153 Wn. App. 621, 632, 225 P.3d 248 (2009).

The procedures set forth in chapter 10.77 RCW implicate constitutional rights. The State's ability to involuntarily commit a person acquitted of a crime by reason of insanity implicates a fundamental due process right. "Commitment for any reason constitutes a significant deprivation of liberty triggering due process protection." *In re*

12

No. 40682-2-III
*State v. Lybbert*

*Det. of Thorell*, 149 Wn.2d 724, 731, 72 P.3d 708 (2003). Substantive due process requires that involuntary commitment of the criminally insane is only justified when the person is both mentally ill and dangerous. *State v. Bao Dinh Dang*, 178 Wn.2d 868, 875, 312 P.3d 30 (2013).

In order to preserve this substantive due process right, chapter 10.77 RCW provides procedural due process protections. The statutory scheme includes significant safeguards, including periodic reviews of the acquittee's mental health every six months, the ability to apply for final discharge or release from confinement, and the limitation of commitment to the statutory maximum sentence of the crime charged. *Beaver*, 184 Wn.2d at 247-48. These procedures ensure that the acquittee has sufficient opportunities to rebut the presumption of continued insanity and dangerousness. *Id.* at 248-49. But because these statutes allow a person's liberty interest to be deprived, they must be strictly construed. *In re Det. of Marcum*, 189 Wn.2d 1, 8, 403 P.3d 16 (2017).

These constitutional issues are properly addressed by reading the phrase "order a hearing" to require the court to commence a hearing within 45 days unless good cause supports a continuance beyond that period. On the other hand, the State's reading would raise serious constitutional concerns. In this case, the State advised the trial court that Mr. Lybbert probably qualified for unconditional release but nevertheless wanted to continue to restrict his freedom for at least another six months so it could conduct various examinations and reviews before making a recommendation.

No. 40682-2-III
*State v. Lybbert*

Nevertheless, the State argues that we should interpret the phrase "order a hearing" as only a scheduling mandate; requiring the court to issue a scheduling order within 45 days. We disagree. The menial task of scheduling a hearing does not take 45 days, especially in light of someone deserving of conditional or full release.

The State asserts that reading the statute to require that the court order a hearing to commence within 45 days creates an impossible timeline in light of the secretary's obligation to prepare a recommendation to the court.

The procedures for obtaining court review of release are set forth in chapter 10.77 RCW. When a direct petition is filed under RCW 10.77.595(5), "the secretary shall develop a recommendation as provided in subsection (1)." RCW 10.77.595(1) provides that "the secretary shall determine whether or not reasonable grounds exist for release." "In making this determination, the secretary *may* consider the reports filed under RCW 10.77.400, 10.77.530, 10.77.545, and 10.77.565, and other reports and evaluations provided by professionals familiar with the case." RCW 10.77.595(1) (emphasis added). Not only do the statutes listed refer to reports that have already been prepared as part of the initial and ongoing commitment, but the statute does not require the secretary to review these reports before making a recommendation on release.

No. 40682-2-III
*State v. Lybbert*

The State asserts that in addition to the requirement of RCW 10.77.595(1), the secretary must meet the requirements of RCW 10.77.139.[2]  Under this statute, 45 days prior to issuing a recommendation under RCW 10.77.595, "the secretary shall submit its recommendation with the committed person's application and the department's risk assessment to the public safety review panel."  RCW 10.77.139(3).  While RCW 10.77.139 only requires 45 days' notice to the public safety review panel, the State contends that it takes time to create a risk assessment and preliminary recommendation.  Thus, the State argues, the secretary cannot prepare a recommendation for the court within 45 days given the requirements of RCW 10.77.139.  For several reasons, we find this argument unconvincing.

First, it is not clear that RCW 10.77.139 applies when a committed person files a direct petition for release with the court as provided in RCW 10.77.595(5).  Instead, RCW 10.77.139 specifically addresses the secretary's recommendation upon a committed person's "application" for release.  As noted above, one method for seeking release is when a committed person files an "application" with the secretary for release.  RCW 10.77.595(1).  Another method is when the secretary sua sponte files a petition with the court.  In those circumstances, preliminary review—including assessment by the Public Safety Review Panel—can occur before any petition for release is filed with the court.

---

[2] Former RCW 10.77.270 (2013) has been recodified as RCW 10.77.139.

15

No. 40682-2-III
*State v. Lybbert*

While RCW 10.77.139 clearly applies when release is sought under RCW 10.77.595(1) and (2), when strictly construed the statute does not address procedures when a petition is filed without an application.

Even assuming the procedures set forth in RCW 10.77.139 apply when a committed person files a direct petition with the court, this does not preclude the State from seeking a good cause continuance. Here, the State moved to strike the hearing date but did not ask for a good cause continuance until after the hearing was over. The trial court found this motion was late and lacked good cause. The State does not appeal this decision.

Finally, we note that when a direct petition for release is filed with the court, the committed person has the burden of proving that he or she "no longer presents, as a result of a mental disease or defect, a substantial danger to other persons, or a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions." RCW 10.77.595(3), (5). While the State maintains that best practices dictate that the secretary's recommendation be informed by various assessments, evaluations, and reviews, the State is not precluded from pointing out the lack of such information to show that the petitioner has not met the burden of proof.

Here, the trial court correctly interpreted RCW 10.77.595(3) to require that a hearing be initially set within 45 days of Mr. Lybbert filing a direct petition with the

16

No. 40682-2-III
*State v. Lybbert*

court under RCW 10.77.595(5).  The State failed to file a timely motion to continue this

hearing and does not challenge the court's finding that its late request lacked good cause.

Affirmed.

_____
Staab, J.

I CONCUR:

_____
Cooney, J.

No. 40682-2-III

LAWRENCE-BERREY, C.J. (dissenting/concurring in result)—The plain meaning of

RCW 10.77.595(3)[1] is inapposite to the majority's interpretation that a hearing must be

*held* within 45 days of the trial court's receipt of the petition for release. The statute does

not say "hold a hearing." It says, "order a hearing."

As a preliminary matter though, nothing precluded the trial court from ordering

Daniel Lybbert's hearing to occur on July 10, 2024, and I see no abuse of discretion in

not granting the State's continuance request. The State did not provide the trial court any

evidence that Mr. Lybbert posed a danger to the public.[2] Although I dissent, I join the

majority in affirming the trial court's order of release.

*Statutory interpretation*

As noted by the majority, our primary goal when interpreting statutes is to

determine and give effect to the legislature's intent. *State v. Schwartz*, 194 Wn.2d 432,

439, 450 P.3d 141 (2019). A court discerns legislative intent from the plain

---

[1] During the pendency of this case, chapter 10.77 RCW was recodified. Former RCW 10.77.200 (2023) was recodified as RCW 10.77.595. The substantive language did not change. For purposes of future clarity, I refer to the recodified statute.

[2] Nor did the State seek to supplement the record under RAP 9.11 during the long pendency of this appeal.

No. 40682-2-III
*State v. Lybbert* – dissenting/concurring in result

language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. *Whatcom County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 186 Wn.2d 648, 667, 381 P.3d 1 (2016). If the meaning of the statute is plain on its face, we must give effect to that plain meaning. *Schwartz*, 194 Wn.2d at 439.

RCW 10.77.595(3) provides in relevant part: "The court, upon receipt of the petition for release, shall within 45 days order a hearing." The statute has only one plain meaning: the court within 45 days of receipt of the petition shall "order a hearing." RCW 10.77.595(3). Trial and hearing dates are set by a court order. The statute's plain meaning requires this order to be entered within 45 days of the court's receipt of the petition.

Had the legislature intended that the hearing be *held* within 45 days, it could have said so. It did not. Nothing in RCW 10.77.595(3) speaks of when the hearing must be held. The closest the statute comes to constraining the trial court in setting a hearing date is the requirement that any continuance of the hearing date "shall only be allowed for good cause shown." RCW 10.77.595(3).

Ultimately, in resolving a question of statutory construction, appellate courts will adopt the interpretation that best advances the legislative purpose. *LaCoursiere v. CamWest Dev., Inc.*, 181 Wn.2d 734, 742, 339 P.3d 963 (2014). As explained below, the majority's interpretation frustrates the legislative purpose of RCW 10.77.595.

2

No. 40682-2-III
*State v. Lybbert* – dissenting/concurring in result

The majority correctly notes that RCW 10.77.595 establishes three methods for a petitioner seeking conditional or full release. RCW 10.77.595(1), (2), (5). Majority opinion at 10. Under the first method, a committed person applies to the secretary of the Department of Social and Health Services. RCW 10.77.595(1). Under the second method, the secretary, after considering reports and evaluations, petitions the trial court for the committed person's release. RCW 10.77.595(2). Under the third method, the committed person petitions the trial court for release. RCW 10.77.595(5). All three methods require the secretary's recommendation. RCW 10.77.595(1), (2), (5).

With respect to the third method, the method used by Mr. Lybbert: "Upon receipt of [a] petition, the secretary shall develop a recommendation as provided in subsection (1) of this section and provide the secretary's recommendation to all parties and the court." RCW 10.77.595(5). Subsection (1) of RCW 10.77.595 permits the secretary to consider "reports filed under RCW 10.77.400, 10.77.530, 10.77.545, and 10.77.565, *and other reports and evaluations* provided by professionals familiar with the case." (Emphasis added.) Our record contains an uncontradicted statement that the process used by the secretary in obtaining needed reports cannot be completed within 45 days.

The process the legislature created in RCW 10.77.595(5) envisions the secretary being informed before recommending to the court whether a committed person can or cannot be safely released to the public. The majority's interpretation of RCW 10.77.595(3) frustrates rather than furthers this purpose. The majority's interpretation requires the State to file a motion to continue in every case. And because a

3

No. 40682-2-III
*State v. Lybbert* – dissenting/concurring in result

"[c]ontinuance of the hearing date shall only be allowed for good cause shown,"

RCW 10.77.595(3), this risks such motions being denied. Certainly, this is not how the

legislature intended RCW 10.77.595 to work.

I disagree with the majority that the legislature's intent was to create an

expedited process for releasing persons to the public who might have committed heinous

crimes due to a mental defect or condition. Because the majority's interpretation of

RCW 10.77.595(3) creates an expedited process for such people, I dissent.


_____
Lawrence-Berrey, C.J.

4